WALKER, APPELLANT, vs. THE CITY OF ST. LOUIS, RESPONDENT.

15 563
110 272
15 563
165 611

1. Taxes paid to a city collector, with a full knowledge of all the facts, the city having a color of right to collect them, must be regarded as voluntary, and not made under such circumstances, as will authorize the party paying them to recover them back.

2. The proper mode of resisting the payment of illegal taxes, is to tender the amount really due, and resist the payment of the balance. A city having a right to collect some portion of the taxes complained of, and a color of right to collect the balance, cannot be made a wrong doer, by a voluntary payment of the taxes, and the bringing of an action afterwards to recover them back.

## STATEMENT OF THE CASE.

This was an action, brought by Walker to recover of the city all the taxes beyond one-sixteenth of one per cent. per annum, paid by him from the year 1845 to 1849, inclusive, on real estate in the new limits.

The charter of 1841, which first brought within the city the property thus taxed, provided that the common council should within twelve months thereafter, cause to be graded and Macadamized, the carriageway of Broadway, South Seventh, Washington Avenue and Market streets, 25 feet wide from the boundaries established by said charter, to the nearest point Macadamized within the old limits; and that until such carriage ways were made and completed, the lots and grounds in the new limits, should not be taxed for city purposes, more than one-sixteenth of one per cent.

The plaintiff's petition alleges, that the city had not, before the commencement of this suit, caused said carriage way to be graded and Macadamized, according to the requirements of said act; but had, nevertheless, taxed the plaintiff's real estate within said new limits, during the several years named, at or about the rate of one per cent. each year, which taxes the plaintiff was compelled to pay, through the agency of collectors, directed to enforce collection thereof by distress of goods and chattels, or by the sale of the property taxed. The plaintiff claimed, that the city had no right to tax the property in question beyond one-sixteenth of one per cent. each year. The answer of the city sets out, particularly, what was done in an attempted compliance with the charter of 1841, in respect to grading and Macadamizing the carriage ways or streets named; shows a strict compliance as to Broadway and Market streets, and, that a literal compliance could not, in reference to South Seventh street, have been observed; that if said street had been extended, without deviation, it would have crossed Carondelet Avenue, and struck the river considerably north of the new southern boundary of the city, and would have cut up into irregular shape and pieces, lots and blocks previously laid out; impaired the beauty and regularity of that part of the city, occasioned great damage to the owners of said blocks and lots, and have subjected the city to the payment of heavy sums on account of such damages; that no satisfactory arrangement could be made with the proprietors of the land between Lafayette street and the southern limit of the city for extending South Seventh street through their lands to said limit; that in view and in consequence of all these difficulties, it was deemed advisable to connect South Seventh street with what had been called Carondelet Avenue, through Lafayette street, and grade and Macadamize a carriage way thereon, to such southern limits, which was done accordingly. The answer gives as a reason, for deviating from a direct line, in extending Washington Avenue to the new western limits of the city, that satisfactory terms could not be agreed upon, extending said avenue through the houses and grounds of Mr. Robbins.

The answer then charges, that the mode in which said streets were laid out, graded, &c.,

besides being less expensive to said city (of which the plaintiff was and has continued to be an inhabitant and tax payer,) was as much in accordance with, and promotion of the general interest and convenience of the city and its inhabitants, as any other mode that could have been adopted; was never in any manner, objected to by said plaintiff, but was acquiesced in by him and generally by said inhabitants; that having thus satisfactorily performed the condition of the charter, the city proceeded to levy and collect taxes in the new limits, at the same rate as in the old limits, and continued to do so down to the year 1850; that such taxes were paid without objection, except in three or four instances; that the plaintiff had invariably paid without any protest or objection whatever, and with a full knowledge of the facts upon which his rights in the matter depended, and with a knowledge that one or two other persons had obtained injunctions, restraining the city from collecting taxes beyond one-sixteenth of one per cent. on their property in the new limits. The answer denies all compulsion in collecting the taxes of the plaintiff. It charges, that about $150,000 of the taxes collected within the new limits, had, at various times, been expended in grading and paving streets and alleys, and making other improvements in said new limits, with the knowledge of the plaintiff, without any objection from him, but with the acquiescence of himself and others owning property in said new limits, by means whereby the property of the plaintiff, in said new limits, had been increased in value.

The answer also states, that the remainder of the taxes collected on property in the new limit has all been expended in payment of the debts of the city, and in laying out and improving streets and alleys therein, and in other ways for the benefit of said city'and the inhabitants thereof; all of which was done without objection on the part of said plaintiff, but with his knowledge and approbation, and whereby the plaintiff, as an inhabitant of and the owner of property in said city, was greatly benefitted

The answer then claims, that the plaintiff, by having thus acquiesced in the mode of extending, grading and Macadamizing said streets, and by having, with a full knowledge of the facts, without compulsion, but voluntarily, paid the said taxes, and by having stood by and seen, without objection and with approbation, said taxes, as well as those collected of others, expended as aforesaid, in part for his own benefit, has barred and precluded himself from all right to recover any portion of said taxes.

It was agreed to submit the case to the court, and on the hearing, the following facts were admitted to be true:

1st. That the plaintiff paid to the city collector the several taxes mentioned in his petition, and set out in the annual receipts on file at the dates mentioned in the receipts; and that said taxes were assessed on lots owned by the plaintiff, situated within the present limits of St. Louis and without the limits of said city, as existing prior to the 15th day of February, 1841. The assessments are annually stated in the collector's receipts on file.

2nd. The facts stated in the answer, in relation to the streets called Broadway, South Seventh, Washington Avenue and Market, are to be taken as proven, and it is admitted, that the provisions of the charter, in relation to said streets have not otherwise been complied with, than as stated in said answer.

3rd. The several payments of taxes by the plaintiff, was made by him without objection or protest. They were made to the authorized city collector on the presentment and demand of payment by him.

4th. That from 1843, to the commencement of this suit, the city had collected taxes at the rates mentioned in the answer within the new limits, and, that of the amount thus collected $151,124 66 had, before the commencement of this suit, been expended in grading and Macadamizing streets and alleys in the new limits, with the knowledge of and without objection from the plaintiff; and that before the commencement of this suit, all the taxes had been expended by the city, and that the plaintiff from the year 1843, to the commencement of this suit, was the owner of a great deal of real estate both in the old and new limits.

5th. Either party may read such portions of the published city ordinances as may be relevant to the case.

## Walker vs. The City of St. Louis.

The parties, respectively, reserved the right of exception and appeal. On the trial the plaintiff read the revised ordinances of 1843 and 1846, in respect to revenue, and the defendant showed in evidence Hutawa's map of the city.

The court below gave the following opinion on the law of the case:

"That the facts, as agreed, show that the payments in question, were made under no mistake of the facts; and the plaintiff is not entitled to recover back money paid by him with a full knowledge of all the facts, or with full means of obtaining such knowledge, unless the payments were made under compulsion, by taking an unfair advantage of the plaintiff s position or circumstances at the time."

That the existence of the power by ordinance, to levy upon and sell the personal property of delinquent tax-payer, and to advertise and sell their real estate, does not render payments of taxes compulsory, if made without objection or complaint and before actual levy, or seizure, or sale, or advertisement for sale, and in this case there were compulsory payments, in contemplation of law, and no unfair advantage was taken of plaintiff's position or circumstances at the time."

"That the plaintiff having made the payments with a full knowledge of all the facts, and without compulsion or unfair advantage taken the defendant expended the money thus received, and the plaintiff knew it would be expended, as stated in the agreed case; and in law must be considered as having voluntarily given to the defendant the money in question, for the very purposes to which it was applied."

And the court below gave judgment for defendant  To the decision and judgment aforesaid, plaintiff excepted. A motion for a new trial for the usual reasons was made, overruled, and exceptions saved.

The bill of exceptions contains an agreement that the parties may read in the supreme court any relevant city ordinance, and Hutawa's map of the city shall be treated as part of the record.

## SPALDING & SHEPLEY, for appellant.

I.   Money paid on coercion, or by duress, or by mistake, can be recovered back.

4 Pick. 361: A person compelled illegally to pay taxes to support public worship, may maintain an action to recover it back.

12 Pick. 7: A non-resident of a town, owning real estate therein, being assessed for his poll and personal estate, after paying the tax, can recover it back by suit.

14 Pick. 356: Payment of part of tax and taking receipt for the whole (the other part having been raised by distress and sale) is no waiver of suit against the collector.

4 Metcalf 181: Payment of taxes to a collector, who has a tax bill and warrant in due form, is compulsory payment; and if such taxes were assessed without authority, they can be recovered back, though the party made no protest before payment.

5 Metcalf 73: A party being illegally assessed, may maintain his action to recover back the tax collected of him and received by defendants.

17 Mass. Rep. 461: Voluntary payment of taxes does not affect the right to recover it back on an illegal assessment: 12 Pick. Rep. 7.

The case in 4 Metcalf above cited, 2 Strange 916; 4 John. 201; 7 Greenl. 134; 7 Barn. & Cres. 73; 2 Barn. & Cres. 729, to the point, that where money is paid, to obtain possession of property which the party making the illegal demand has under his control, such payment is considered compulsory and can be recovered back: 9 John. 201 and 369,—two cases, showing that such payment is not voluntary, &c.

II.   The suit is here against the city, not against the agent or collector, so that no notice at the time of payment was necessary.   Notice is only as to an agent, who may collect or receive money and pay it over to his principal, bona fide, and then the law has been held, that he cannot, in most cases be responsible: 10 Peters 137; 3 Moule & Lelwyn 318; 2 Cowper 568, 816.   That

where an agent has been paid by mistake, and has paid it over to his principal, he is not liable. But he is, if before he pays it over, he has notice: 1 Taunton 355 is a case where money was recovered back from a bailiff, who under color of process, by excess of authority, coerced its payment, though he had paid once to the sheriff.

III.    There was coercion and legal duress.   The city charter of 1843, art. 6, section 9; art. 3, section 2, paragraph 1; ordinance of March 29th, 1850, No. 2375, sec. 5, orders collectors to seize and sell goods of party if tax is not paid: Article 2, sections 5, 7, 8, 9, 10, 11 and 12; Rev. Ordinances, p. 336; Ordinance Sept. 17th, 1843, article 1, secs. 18, 22, 23, 24, 34.

IV.    The fact, that the party might have gotten an injunction, and had a preventive remedy, is no reason for denying the remedy by action.

The remedy by injunction is onerous; bond and security have to be given.   And there is no other instance where the party is bound to use the preventive remedy, and if he does not, is barred from suing for the grievance inflicted on him.

Injunction is a remedy that is the privilege of the party aggrieved, not the right of the party inflicting the grievance.   The party doing the wrong, cannot prescribe to the person injured by his act, which of two remedies he shall use.   By doing the wrongful act he has placed himself in mercy, and he has no legal cause of complaint, if the party injured shall select that remedy which is most onerous to the tort-feasor.

Nor is delay a waiver of the right to sue.   The lapse of time that deprives a man of his action is fixed by law, and nothing short of this bars a suit, where a right to sue has once existed.   If, therefore, in the present case, Walker had a right to sue immediately on payment of the illegal tax to recover it back, that right still exists, unless the time presented by the statute of limitations, has elapsed since.

## R. M. FIELD, for the same.

I.    The illegality of the several taxes collected of the appellant, has been directly decided by this court in the reported case of Allen vs. City of St. Louis, 13 Mo. Rep. 400.   As the decision of the court-below was in accordance with the law, as ruled by this court on this point, it need not be further noticed in this respect.

II.    The several taxes mentioned in the petition, were collected compulsorily.   The error of the court below consisted in holding that a tax levied by a public corporation and collected by the agency of a public officer, armed by a public ordinance with the power of distress and sale, was to be regarded as a mere voluntary contribution.

1.    The words "tax levied" import, ex vi terminorum a compulsory exaction of money.

2.    In such sense the power to levy taxes is granted to the city by the charter.

3.    In the same sense the power thus delegated has been, in fact, exercised by the city, as appears by reference to its ordinances.

The city ordinance of 1843, in relation to revenue, declares :

§ 1.    That a tax shall be levied, &c.

§ 15.    The auditor shall make out and deliver to the collector a statement of the taxes, &c.

§ 18.    The collector shall give notice in two newspapers, that the taxes are due and payable; if they are not paid in three weeks he shall make a personal demand, and if they are not paid in ten days thereafter, he shall proceed to collect the same by levying upon the goods, chattels and personal property of the delinquent found in the city.

§ 19.    The collector shall proceed to the sale of the property in the same manner as prescribed by law for sale on execution.

§ 21-30.    Authorize and regulate the sale of real estate for taxes.

The revised ordinances of 1846 contain the like stringent provision for the enforcement of the payment of taxes.

4    Every receipt of the collector, given to the appellant and filed in the case purports, on its

face, to discharge a tax. And it is manifest that all the collections were made under color of the charter and by force of the forementioned ordinances.

5. Under the circumstances above mentioned, the authorities are clear, that the payment is to be adjudged to be compulsory, and the money paid may be recovered back.

Thus, in Boston & Sand. Glass Co. vs. Boston City, 4 Metcalf 181, it was adjudged, that when payment is made to a collector having the power of distress, the sums, though paid without protest, dispute or complaint, may be recovered.

So in Morgan vs. Palmer, 2 B. and C. 729, where the head officer of a borough illegally took a sum of money for a license, the court decided that the payment was not voluntary and might be recovered.

So in Snowdon vs. Davis, 1 Taunt. 359, it was held that money collected under terror of distress might be recovered.

So in Alstan vs. Durant, 2 Strobhart's Rep. 257, it was decided that fees taken by a sheriff must be regarded as executed colore officie, and if illegal, might be recovered. The cases are reviewed with much ability, and the above cited case of Morgan vs. Palmer is cited with approbation.

So in Broom's Legal Maxims 132, it is said by way of qualification to the maxim interest reipublicæ ut sit finis litium, that money may be recovered, if paid under compulsion of colorable legal process.

So in Wing's Maxims 482, in explanation of the maxim, valenti non fit injuria, it is said that this maxim holds only when the party has a freedom of exercising his will; and therefore, where a debtor from mere necessity, occasioned, for instance, by unlawful detainer of goods, pays more money than is justly demanded, he shall not be said to pay it willingly, and may recover it.

In the case of Ferguson vs. St. Louis, decided at the last term of this court, it was admitted by Mr. Drake, in his learned brief for the city, that taxes illegally assessed and collected by the city, might be recovered at law.

So in Campbell vs. Hall, 1 Cowper 204, it was held that duties paid to a collector, without lawful authority on his part, to exact them, and still remaining in his hands, might be recovered.

6. The practice of entering a formal protest against the collection of customs, by a public collector, turns upon a principle not applicable to this case. There the protest is made to prevent the payment over by the collector to his principal who being the sovereign cannot be sued. The practice of protest in such cases has been adopted, therefore, to insure a personal remedy against the collector: Story's agency secs. 300, 301; Snowdon vs. Davis, ubi subra; Campbell vs. Hall, ubi subra; Sadlu vs. Evans, 4 Burrow's Reports 1984.

7. The decision of the court below in effect declares that the taxes levied on the appellant, was to be regarded as a free will offering by him; in short, that they were, what is known in early English history as a Benevolence.

As this may be regarded as the first attempt to introduce among us that antiquated                of learning, the court is referred, for the origin, cause and character of Benevolences, to the following authorities: 12 Coke's Rep. 119, Law of Benevolences; Hume's Eng. cap. 17 ad fineur; Id. cap. 25, Morton's Fork; Hallam's Court. History, pages 19, 25, 197; Stat. Ric. 3 cap. 2, in which it is declared, in the emphatic language of the age, that "the charge, execution or imposition called a benevolence, shall be damned and annulled forever;" 2 Ruffh. Statt.; Stat. 13 Cor. 2 cap. 4—the last instance of legalizing benevolence in English history; 3 id. 208.

III. Treating the payment as purely voluntary on the part of the appellant, still, it cannot be regarded as other than the payment of a tax assessed on property holders in respect to their several estates; and as the largest property holder has since been exempted by the judgment of this court, from his contribution, it would be a gross fraud upon the appellant to keep his money under this change of circumstances: See Northrop vs. Grams, 19 Conn. Rep. 548.

## H. S. Geyer, for the City.

In order to entitle the plaintiff to recover the money sought to be recovered in this action,

there being no allegation or evidence of any mistake of facts by the plaintiff, or fraud on the part of the defendant or the officers of the corporation, it must be proved, not only that the taxes paid were illegally assessed, but that the money was paid under duress or legal compulsion, and it must further appear, that in equity and good conscience it ought to be refunded.

A party paying money with a full knowledge of the facts of the case, (as must be assumed in this case,) cannot recover it, although the demand is unlawful. Ignorance of the law will not avail him: Beebe vs. Sumly, 2 East 469; Busbane vs. Davis, 5 Taunt. 147; Sourie vs. Bourdeau, Doug. 471; Chitty on contracts, 633, 639; Payne vs. Chapman, 4 Ad. & E. 364; —— vs. Henderson. 3 Bos. & P. 520; Robinson vs. City council of Charleston, 2 Rub. Rep. 317; Sprague vs. Berdsoll, 2 Cowen 419; Ellid vs. Swartwout, 10 Pet. 137.

The right to tax depends upon the proper performance of a condition precedent. The thing to be done is not pointed out precisely, and as to what constitutes it, persons might differ.

The existence of an ordinance, authorizing a collector to levy upon and sell the personal property of a party, in whose name real estate is assessed, which was not attempted to be enforced, does not constitute duress or legal compulsion; especially where, as in this case, the payment is made upon the presentation of the bills by the collector, without protest, objection or complaint, or any attempt to avoid or resist the payment. Besides, if the collector had attempted to enforce payment by seizing goods, it would have been a mere trespass, and a mere possibility that a trespass may be committed, is neither duress nor compulsion; but as no such attempt was made, the existence of the ordinance (if legal) is not more compulsory than would be the existence of a legal process to enforce an unjust demand, and a payment in anticipation of such process has never been held to be compulsory, unless the process must issue as a matter of legal necessity, upon refusal to pay, and then, only, where the party paying has no legal means of resisting or avoiding the payment, that is, where the process is the end of the law: Chitty on contracts, 633-6-9, and cases above cited.

Money paid with a full knowledge of the facts, there being no fraud, cannot be recovered, unless it appears that the payment was made under a controlling necessity and, and that the party could only save himself or his property by making payment of an illegal demand. In other words the demand must be accompanied by the exertion of a legal power to enforce it, against which he cannot protect himself.

Money paid for the release of cattle, taken damage feasant, although the distress was wrongful, cannot be recovered, on the ground that the party had a remedy by action of replevin or trespass: —— vs. Cooper, Cowper's R. 414.

If a party, with a full knowledge of the cause of action, pay money demanded and attempted to be enforced by legal process, he cannot recover it, although the demand was unjust and unfounded, there being no fraud in the other party: Chitty on contracts, 639; Hamlet vs. Richardson, 9 Bing. 644.

Where money was paid to avoid a distress, Lord Kenyon held it to be a voluntary payment, and could not be recovered: Knibs vs. Hall, 1 Esp. 84.

Money paid under a distress for a poor man's rate, which was subsequently quashed, it was held, could not be recovered, because the party paying, did not give notice of appeal, under the statute; that is, he neglected the legal means of avoiding payment: Priestly vs. Watson, 2 C. & M. 691.

An action does not lie to recover money paid for the release of goods illegally taken, by virtue of a warrant of distress: Webber vs. —— 2 N. H. R. 461.

Nor will it lie against a landlord for money paid by a tenant under an impending distress which has not been enforced under circumstances of willful oppression or abuse, but has been resorted to in good faith, to recover rent alleged to be in arrear, although more be due, because the tenant had his remedy by action of trespass or replevin: Colwell vs. ——, 3 Watts 327.

These cases all proceed upon the principle, that wherever there exists a remedy by which the collection can be prevented, the payment will be regarded as voluntary, unless that remedy

canno', in the particular case, be made available; and it is believed, that there is not a single ca-e of respectable authority in which the principle is denied.

In Massachusetts and perhaps Maine, there have been cases adjudged, which will probably be relied on by the plaintiff, as establishing a contrary doctrine, and it must be admitted, that the summary of the decisions, as given in the head notes, would seem to warrant that conclusion. It is held, in substance, that money paid to a collector, on account of taxes illegally assessed, may be recovered, in Massachusetts; but on looking into the circumstances of the case and the opinions of the court, it would seem, that instead of denying the general rule, the courts distinctly recognize and approve it, and because a tax warrant is by statute law a penal process against person and property, and the party can save neither his person nor property in any other mode than by paying the demand, it is held that such paying is compulsory. The reasons on which the decisions are founded are given at large in Preston vs. City of Boston, 12 Peck 7, and the Boston & Sandwich Glass Company vs. The City of Boston, 4 Metcalf 181.

In the first of these cases, the Judge delivering the opinion says: "A party who has paid voluntarily under a claim of right, shall not afterwards recover the money, although he protested at the time against his liability. Threat of duress for rent or legal process is not duress; but the warrant of the collector, under our statute, for the assessment and collection of taxes, is in the nature of an execution, running against the person and property of the party, upon which he has no day in court, no opportunity to plead and offer proof and have a judicial decision on the question of liability. When, therefore, a party not liable to taxation is called upon peremptorily to pay upon such warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress and not voluntarily, and by showing that he was not liable to recover it back, as money had and received."

The judge then proceeds to state the efforts of the plaintiff to avoid the payment and says: "On the first notice of the tax, the plaintiff, applied to the treasurer and collector, and afterwards to the city council, and remonstrated against the tax, but they decided that it must be paid. The law under which the treasurer and collector acted, obliged him to issue the warrant under which the person and property of the plaintiff would have been liable to be taxed."

This case then, fully recognizes the general rule, that in order to recover money, paid with a full knowledge of the facts, it must appear, that there was a controlling necessity to make the payment, and only decides, that by the law of Massachusetts, a tax warrant cannot be avoided in any legal mode, and therefore a payment of a demand upon such a warrant is compulsory. But if there had been any legal means by which the party could have had a judicial decision on his liability, or saved his person and property, the payment would have been regarded as voluntary and the money held not to be recoverable.

The tax was paid in that case, before any warrant issued, but not until the plaintiff had done all that could be done, under the laws of Massachusetts, to save himself and property, by applying to the corporate authorities, remonstrated and finally paid under protest. If, therefore, the ordinance of St. Louis, authorizing a levy on personal property, had been of the same legal effect as a tax warrant in Massachusetts, it must appear that the plaintiff did all that was in his power to save his property, and that having done so, the resort to a levy on his property, was a matter of legal necessity; and that when the collector proceeded under the ordinance, there would be no mode of preventing a sale or having a judicial decision on the question of his liability. But, in the case at bar, the money was paid without any, the least, intention of an objection.

Certainly, when a party pays money to be paid over into the treasury and appropriated for public purposes, and he does not make the payment voluntarily, and expects to recover, he is bound to give notice, by protest or otherwise, if such notice can be required in any case; because, money so paid is almost necessarily expended for public purposes, where it is paid without objection, but might be recovered, if notice was given that the liability of the party to pay the money would be tried in an action to recover it.

Walker vs. The City of St. Louis.

In the other case, 4 Metc. 181, the court holds, that payment of taxes to a collector, who has a warrant in the form prescribed by law, is to be regarded as a compulsory payment, and if such taxes are illegal, the money paid may be recovered. This is doubtless a salutary rule, not to be departed from but in cases resting upon plain and obvious distinctions from such as are ordinarily and familiarly know as embraced within it. But this rule has its exceptions: "If there be a controlling necessity, arising from peculiar circumstances, under which the money is demanded, the rule does not apply." There is another class of cases to which the present more appropriately belongs; which is, where the payment is made upon an illegal demand, by one who has authority to levy upon the property of the person upon whom the demand is made, and by the sale of such property to satify and discharge the claim, and payment is made to prevent a seizure and sale. It arises from the authority placed in the hands of the collector, by virtue of his warrant to levy, directly, upon the person or property of, every individual whose name is borne on the tax list in default of payment of taxes." And the case in 12 Pick. 7, is referred to as authority and for the legal effect of the warrant under the statute of Massachusetts: 17 Mass, 461.

This case affirms the general principle, but states, as an exception, within which the case then before the court is brought, because of the peculiar circumstances arising from the effect which a tax warrant has under the laws of Massachusetts; that is, because in that State, there is no legal mode by which the party can save himself: the payment is not voluntary, and this is, in truth, no exception to the general rule; it assumes that in order to recover money paid, to satify an illegal tax, there must be duress or compulsion; or, in the language of the court, a controlling necessity arising from the nature of the process upon which the party is obliged to pay and cannot save himself and his property in any other way.

The general rule is thus directly affirmed, and unless it shall be held, that a tax bill, in the hands of the city collector is of the same force, by the laws of the State, as a tax warrant has in Massachusetts, the plaintiff cannot succeed in the action, consistently with the Massachusetts cases. He must show a case of legal compulsion or controlling necessity to pay and that he could not save his property in any other way, nor obtain a judicial decision on the question of liability.

It will be observed that in all the cases in which the payment was held to have been made under duress, or compulsion, the process was legal and authoritative. It has not been held by any court that money paid under a process merely void, is a payment by compulsion.— Now the authority of the city collector, to levy taxes assessed on real estate by seizure and selling the personal property of the party to whom the real estate is assessed, depends entirely upon an ordinance of the city council; and unless that ordinance is authorized by the charter, it is void, and the seizure of property under it would be a trespass—presenting no case of controlling necessity to pay the demand, the law affording the party abundant means of saving his property, and obtaining a judicial decision on the question of his liability.

At the time of the levy of the taxes in the case at bar, the charter of 1843 was in force, by the second section of the third article of which, a power was conferred on the mayor and city council "to levy and collect taxes not exceeding one per centum on all property made taxable by law for State purposes." There was, however, no power conferred upon the corporation by express grant, to provide for the seizure and sale of property of any kind for the non-payment of taxes, except what is implied from the 9th section of the 6th article by which power is conferred, to provide, by ordinance, the manner of redeeming property, real or personal which has been sold or advertised for sale, on account of city taxes; and it has been held, by this court that the city authorities may sell real estate, for taxes levied thereon; but it by no means follows that it would be lawful to seize and sell the personal property of any person, to satisfy taxes assessed on real estate, in the name of such person: City vs. Russell. 9 Mo. 507; City vs. Allen, 13 Mo. 400.

The tax is a charge upon the property, and remains a charge by way of lien, until it is paid, but it creates no debt against the person in whose name the assessment is made; much less is it in the nature of a judgment against such person upon which any process equivalent to, or in the

nature of an execution can be lawfully issued, and other property, real or personal, seized and sold to satisfy the demand under any law of this State. If personal estate can be seized and sold to satisfy a tax on real estate, the power of the city council is unlimited. They may provide, that real estate may be seized and sold to satisfy a tax on personal property. Whether the person to whom it is charged ever had any such property or not, they may resolve the assessor's list into judgments against all persons named, and levy upon any of their real and personal estate to satisfy it. Under the ordinance in question (if it be legal,) a tax on land, assessed in the name of a person, who, as is often the case, is not the owner, may be levied on the personal property, and the ordinance and levy under it would be just as conclusive of the ownership of the land as of the legality of the tax upon the land. The assessor is by the ordinance the exclusive and final judge of the liability of the party. The tax list is the record of his judgments, of which the collector may become the executioner, without even the formality of a warrant or process of any kind.

Now if the ordinance is not conclusive of the liability of the party charged, and he may save his property, without payment, by showing that the land taxed was not his, he may do it also by showing that the land, though his, has been illegally taxed. The one is as open to him as the other. In that case, there would not be any legal compulsion or controllining necessity to pay, and the money could not be recovered. But if all matters are concluded against him by the ordinance, if it is indeed an execution that cannot be resisted, then it cannot be legal for want of power in the council to pass it. It will not do to say that it is a lawful exercise of power, because, although it extorts money not due, the money may be recovered, for that is to invest the council with a power to make forced loans; nor can it be urged that such a power exists, because the tax warrant has that effect in Massachusetts; for there, it will be remembered, the warrant was authorized and its effect declared by a statute of the State, while here, the same thing is said to have been done by a corporation, without any specific grant of power, and depends wholly upon a power to be deduced by implication.

The power to pass the ordinance cannot be implied but as a means necessary and proper in the collection of taxes on real estate. Now, is to levy and collet a tax on the property not to charge the taxes on the person or his general property? It is to be a specified charge on the land, for which the land is bound, and nothing else. The appropriate means of enforcing payment, is by a sale of the land itself, which would be in accordance with the general law, but it cannot be necessary or proper under our system, to make the general property of the party charged, liable for a tax on land which may or may not be his, while the land is bound, whether it be his or is not. It cannot, therefore, be held in the absence of an express grant of power to that effect, that an ordinance requires the seizure and sale of personal property to enforce payment of a tax on land, is lawful, as the means necessary to the execution of the power, to levy and collect taxes on property, and an ordinance passed without authority of law, however stringent, can never be construed into legal compulsion: See Ordinances.

But if the ordinance could be enforced, its existence is not compulsion; there was no attempt or even threat of an intention to enforce it; nor would a threat of a resort to legal process have amounted to legal compulsion or a controlling necessity to pay the demand. There was no necessity, certainly, on the part of the collector to exercise the power vested in him; nor is it usual to adopt that mode of coercing payment. The ordinance being in existence, was not compulsory, any more than would be the existence of a satisfied judgment (satisfaction not being entered on the record) upon which an execution might issue.

If, however, we assume that the ordinance had been attempted to be executed and personal property seized, or the land itself advertised to be sold, there still would not be that controlling necessity or legal compulsion to pay the demand, because, in this State there existed a remedy by which the plaintiff's property might be saved, and the question of his liability determined by a judicial decision. It may be regarded as the settled law of the State, that the courts would in such a case arrest the proceedings by injunction. The case of the city of St. Louis against Allen, and the city against Ferguson, decided by this court on elaborate argument establish the proposition. In both cases, the taxes sought to be collected, were on real estate in the new limits, and

Walker vs. The City of St. Louis.

the main question was, the liability of the parties to a tax exceeding one sixteenth of one per cent. and the facts relied upon were precisely those relied upon in the case at bar, to show exces- sive taxation: 9 Met. 199; 10 Pick. 98.

These cases show, that the plaintiff might have had a judicial decision on the question of his liability, or, rather, the liability of his land for the excess above one-sixteenth of one per cent. per annum without payment, and that there was a mode by which he would have saved his prop- erty. But he chose to make the payment without complaint, protest or objection, knowing that others under like circumstances, had sought and obtained the protection of the law against like demands. He made the payment voluntarily, rather to save the trouble and expense of asserting his legal right, than to save the property.

In the case of the city of St. Louis vs. Allen, the point now made was necessarily settled, though it does not appear by the opinion of the court. At the argument it was contended by the counsel for the city, that Allen was not entitled to the interposition of the court by injunction, because, first, the sale of the property to satisfy an illegal tax would be utterly void and not even amount to a     in the title; and secondly, that he had his remedy at law, for by paying the tax he might relieve his property and then recover the money as having been paid under compulsion. By sustaining the injunction, the court voluntarily denied both propositions; for if the sale would neither pass the title nor throw a cloud upon it, or if Allen had a remedy at law, the injunction could not be sustained.

At all events, the repeated decisions of this court establish the proposition, that in this State a party is not under any legal compulsion to pay an illegal tax assessed by the city. He may have a judicial decision on the question of his liability, and in the meantime can, if he will, save his property without payment of the demand upon a state of facts, precisely such as are now relied upon to prove the illegality of the tax.

Lastly, even if the payment was made under circumstances which excused him from resorting to the protection of the court, he is not entitled to recover the money paid, because he is not, under the circumstances of the case, entitled in equity and good conscience to have it refunded by the city. The equity of the transaction which must be taken into consideration, is in favor of the city.

Although the city did not comply with the letter of the condition required by law to authorize a levy on real estate, within the new limits, exceeding one-sixteenth of one per cent. it was com- plied with as near as it could be under the circumstances; and so far as the benefit of the work to the owners of real estate within the new limits was concerned, there was a substantial com- pliance. The plaintiff, especially, was as much benefitted as if there had been an exact and full performance of the condition. Nay, more, for by paving Carondelet Avenue, on which a part of the plaintiff's property fronts, instead of Seventh street, he has received benefits which he would not have received by paving Seventh street. If the latter street also runs through his land, two streets have been paved for him instead of one, for Seventh street has since been opened and paved or Macademized.

Again, the money when paid into the city treasury, was necessarily appropriated to public purposes, and for a portion of the time the city council controlled only one-fourth, and after- wards none of the revenue accruing from taxes on property in the new limits, the appropriations being made by act of Assembly. By the charter of 1843, art. 7, sec. 20, one half at least of the entire revenue of each year is appropriated to the payment of the back and current interest on the debt owing by the city, created by way of loan, the erection of water works and lighting the city conjointly.

The one half of the revenue derived from the new limits, was thus placed beyond the control of the council. The act of January 6th, 1847, sec. 2, page 210, Session Acts, took from them one-half of the residue by enacting that one-fourth of the revenue from taxes on property within the new limits, shall be set apart and appropriated to the grades and paving of streets within the new limits, and in 1849 (Session Acts page 211;) the remaining fourth was disposed of in the same way, and the city now can control not a dollar of the revenue derived from taxes on prop- erty in the new limits.

Walker vs. The City of St. Louis.

It was the duty of the defendant, deriving as he did, in common with the other owners of the property, the benefits of all the revenue collected in the new limits, if he intended to reclaim the money paid by him, to have given notice by protest or otherwise, that he did not pay voluntarily. Had he done so, it might have been reserved; but failing to do so, he has allowed the appropriations to be made, as by law they must be, and having received the full benefit of those appropriations, it is unreasonable in him to demand it back. Indeed, if he had not been specially benefited by the application of the money, he knew that it would and must be expended for public purposes, and ought not to be tolerated in claiming back what he paid without notice, objection or protest of any kind.

## Jno. C. Richardson, City Counselor.

1. The several payments of taxes by the plaintiff were voluntary—without protest or objection, and cannot be recovered back: Knibbs vs. Hall, 1 Esp. 84; Brisbane vs. Dacres, 5 Taunt. 144; Robinson vs. City of Charlestown, 2 Rich. S. C. 317; Sprague vs. Birdsall, 2 Cowen 419; Fleetwood vs. City of New York, 2 Sand 480; Clark vs Dutcher, 9 Cowen 684.

The cases of Forrey vs. Millbury, 21 Pick. 64; Hartford Insurance Company vs. Inhabitants of Hartford, 5 Conn. 15; Atwater vs. Inhabitants of Woodbridge, 6 Conn. (2nd Series vol. 1,) 233; Adams vs. Town of Litchfied, 10 Conn. (2nd Series vol. 5,) 127; Walker vs. Cockran, 8 New Hamp. 166; Northrop's Exr. vs. Graves, 19 Conn. 548; Alston vs. Durant, 2 Strob. 257; Morgan vs. Palmer, 9 Eng. Com. L. Rep. 232, and Elliott vs. Swartwout, 10 Peter's 137, are all clearly distinguishable from the case at bar, and do not conflict with the position here taken.

In the cases of 21 Pick. and 6 Conn., the property of the plaintiffs was distrained, and in the custody of the officer when the payments were made. In the cases of 3 Conn., 10 Conn., and 8 New Hamp., the money sought to be recovered, was collected of the plaintiff by seizure and sale of their property.

Northrop's Ex'r. vs. Graves, was decided on its own merits, and because it was a "hard case." The facts show disgusting meanness in the defendant, of which he was fool enough to boast. The court seems to have resolved itself into a jury, and to have ruled for the plaintiffs, carefully avoiding the assertion of a principle: the case cannot be invoked to overturn the maxim "ignorantia legis non excusat," so firmly established in the jurisprudence of the country.

Alston vs. Durant was a case where a runaway slave, belonging to the plaintiff, had been captured and was in the possession of the defendant who was a sheriff, and who refused to deliver the slave to the owner, without the payment of his charges, &c. In the first paragraph of the opinion, the judge says, "the fact is sufficiently apparent, that he (plaintiff) was among strangers, and was required to pay the disputed items of the account of Durant before his negro would be delivered to him."

The case of Morgan vs. Palmer, is very briefly reported, but it seems that the action was maintained because the defendant required the payment of the fees under colore officii.

Judge Thompson, in 10 Peter's 154, observes, in reference to this case, that it was assumed by the court, that the payment for the license was not voluntary, and that such an objection if well founded would have been fatal to the action.

Elliott vs. Swartwout, 10 Peter's 137, expressly decides, that if the plaintiff paid the duties; though illegally charged, without protest or objection, he could not recover, and the whole case turns upon the point, whether Elliott objected at the time of the payment.

In Snowden vs. Davis, 1 Taunt. 358, the defendant held a warrant, authorizing the seizure of the plaintiff's property; and armed with such a power he threatened to seize the plaintiff's goods, unless he paid the sum demanded. The case is decided upon this hypothesis, and the judge, delivering the opinion says, "the bailiff (the defendant) threatens Snowden to distrain his goods:" page 362.

The case of Boston and Sandwich Glass Co. vs. City of Boston, 4 Metcalf 181, chiefly relied on by the appellant, stands by itself, and is not supported by the authorities to which it

Walker vs. The City of St. Louis.

refers. The judge delivering the opinion, relies upon the case of Ripley et al. vs. Gelston, 9 J. R. 201; Chase vs. Dwinal, 7 Green. 134; Amsburg Man. Co. vs. Town of Amsburg, 17 Mass. 460, and Preston vs. City of Boston, 12 Pick. 7.

In Ripley et al. vs. Gelston, the defendant who was collector of the port of New York, detained a vessel belonging to the plaintiffs, under an illegal demand for port charges, which the plaintiffs paid to effect the clearance of their ship.

The defendant, in 7 Greenleaf 134, detained a raft, belonging to the plaintiff, asserting, without right, a claim for toll.

The case in 17 Mass. 160, was decided upon an agreed case. The plaintiffs had been taxed by the defendant, on their real and personal property (contrary to the law, as they alleged,) from 1814, to 1820; that for the taxes of the year 1818, their property had been taken by distress, and it was agreed, that if the court should be of the opinion, that the plaintiffs were entitled to recover any portion of the taxes paid, the defendant should be defaulted, and a judgment entered for a sum before agreed upon by the parties. In reply to the statement of defendant's counsel, that there was no pretence that the plaintiffs could recover back the taxes voluntarily paid: Mr. Webster said, that the fact, that a portion of the taxes had been paid without compulsion, went only to the amount of damages. The court defaulted the defendant, but the opinion does not show for what amount, and it may well be supposed, that judgment was given, only for the taxes of the year 1818.

The case of Preston vs. City of Boston, was decided on its own merits. Without even an apparent right, the plaintiff was taxed, he protested against paying from the threshold—urging, at the same time, the ground of his objection. He appealed to the city authorities for relief from the taxes unlawfully assessed, but was denied any redress, and told, that if he did not pay, a warrant would be issued which would authorize the seizure of his person or property.

II. The action for money had and received, is an equitable action, and the plaintiff cannot recover, unless the defendant has received money which ought, *ex equo et bono,* to be refunded.

The plaintiff knew how the city had done the work directed in the 17th sec. art. 7, charter 1841, and made no objection. He knew how the revenue, derived from the new limits was appropriated; that it was expended from year to year in public improvements, which enhanced the value of his property. He paid without a murmur, and knew at the time how the money collected of him and others owning property within the new limits, was to be expended, yet he stood by and saw the money expended, and after realizing the benefit of the expenditure, and knowing that the city cannot recover the money, so expended—that the parties cannot be placed in *statu quo,* he asks to recover that which he paid without objection, and which was expended with his consent. There was no duress of his person or property; no sale nor advertisement for sale of his land, but he paid without compulsion, and remained silent, from 1843 to 1850, during which time his property in the new limits doubled in value. He now says, that he was forced to pay, and, that the defendant inequitably refuses to refund.

The record shows, that from 1843 to 1850, more than one hundred and fifty thousand dollars were expended in necessary improvements in the new limits, and it is a matter of public history, that property within the new limits has more than doubled in that time, and this result has been generally promoted by the improvements and expenditures within the new limits. If the plaintiff can recover, so can every other tax-payer and property holder in the new limits, and to tolerate this would allow the very men who have been enriched by the city, to drive her into bankruptcy.

SCOTT, J., delivered the opinion of the court.

Although the ground on which this action rests for a support, is, that

the defendant has received money to which the plaintiff is equitably entitled, yet, it cannot be denied, that this claim, if it had any foundation in law, is one *strictissimi juri*. The ground on which the plaintiff seeks to recover the taxes that have been paid, is, that there was a condition precedent, the performance of which was necessary to have enabled the defendant to demand the money, which, it is alleged, she has unjustly exacted from him. It is not pretended that the defendant has acted in bad faith, or that she has wantonly exacted money from the citizens, to which she had no color of right. She did that which was supposed to be a substantial performance of the condition which gave authority to assess and collect the taxes, the repayment of which is sought by this action. The plaintiff was a resident of the city, and, as this suit shows, owned a large portion of the property, which has been enhanced in value by the imposition of the taxes of which he now complains. A knowledge of the ordinances, passed in order to fulfill the condition precedent, on the performance of which a right to demand the taxes accrued, may be imputed to the plaintiff. Yet, with this knowledge, he makes no objection, pays the taxes, sees them applied to improvement and the enhancement of the value of the property on which they were levied, and years afterwards, for the first time, is the complaint of extortion made. Whether the condition was substantially complied with or not, is a question about which different opinions may be honestly entertained. But it is supposed, that the judgment of this court, in the case of Allen vs. The City of St. Louis, settles the question, that the condition precedent was not complied with. But does not that case also show, that if the plaintiff was unwilling to pay the taxes, he was under obligation to do so. He might have been relieved against the pretended exactions of the collector, if he saw proper. But he acquiesced; he paid his taxes, saw them applied to the improvement of that very property upon which they had been levied, and now, most unaccountably, would have them refunded to him. The main case relied on by the plaintiff, is that of the Boston and Sandwich Glass Co. vs. The City of Boston, 4 Met. 181. The principle of that case is, as stated: "that the warrant is in the nature of an execution, running against the property and person of the party, upon which he has no day in court, no opportunity to plead and offer proof and have a judicial decision of the question of his liability." Now, the case of Allen vs. The City of St. Louis, on which the plaintiff relied, to sustain his right of recovery, shows, that he was not in the catagory of the Massachusetts tax-payers. He could have been protected from the operation of the collector's warrant, had he seen proper to take the neces-

sary steps for that purpose.   Such being the case, the payments made to the city collector must be regarded as voluntary, and not made under such circumstances of duress as will authorize the party paying the tax to recover it.

There is another aspect in which this case may be presented, which shows, that the assumption of the plaintiff, that the taxes were extorted by duress, cannot be sustained. In the case of The City against Allen, the amount of the taxes, which might have been lawfully assessed, were tendered before any proceedings were had to restrain the collector.   The city had a right to lay some portion of the tax which is now sought to be recovered, one-sixteenth of one per cent. The plaintiff's declaration concedes this.   There were taxes, then, due the city by him. The collector could execute his warrant for them.   They were not paid nor offered to be paid.   The warrant, then, was not void.   Now the only mode in which the plaintiff could place the city in the attitude of a wrong doer, in executing the distress warrant, was, to tender the sum really due, and then to have resisted the payment of the excess above the legal rate of assessment.   As he did not do this, he cannot now complain, that the warrant was void for want of authority.   The only ground on which this action can be supported is, the total illegality of the warrant of distress.   The principle, that an abuse of an authority in law or excess of it, will make the party a trespasser *ab initio*, is not applicable here.   The city had an unquestionable right to levy a portion of tax.   She had done that which, she was advised justified her in assessing the whole amount, and because she, in consequence of this error, assessed a greater tax than she should have done, her act should be sustained to the extent of her authority.   The collector, then, would not have been a trespasser or wrong doer in levying this warrant; and if not, the whole foundation of the plaintiff's action, that the payment made by him was compulsory, in consequence of the illegality of the warrant, is swept from under him.

The other judges concurring, the judgment will be affirmed.