97 U.S. 164
 24 L.Ed. 907
 UNITED STATES
v.
NORTON.
 October Term, 1877
 
 APPEAL from the Court of Claims.
 This is a suit by Emory E. Norton, assignee in bankruptcy of Samuel DeBow & Co., to recover $3,206.66, paid by that firm to the treasury agent at New Orleans, Louisiana, June 13, 1865, under the eighth section of the act of July 2, 1864 (13 Stat. 375), and the regulations of the Treasury Department, on account of certain cotton shipped from Vicksburg, Miss., to New Orleans.
 Said section enacts:——
 'That it shall be lawful for the Secretary of the Treasury, with the approval of the President, to authorize agents to purchase for the United States any products of States declared in insurrection, at such places therein as shall be designated by him, at such prices as shall be agreed on with the seller, not exceeding the market value thereof at the place of delivery, nor exceeding three-fourths of the market value thereof in the city of New York, at the latest quotations known to the agent purchasing,' &c.
 The regulations of May 9, 1865, for the purchase of the products of the insurrectionary States on government account, were approved by the President. They provide:——
 '3. The operations of purchasing agents shall be confined to the single article of cotton; and they shall give public notice at the place to which they may be assigned that they will purchase, in accordance with these regulations, all cotton not captured or abandoned which may be brought to them.
 '4. To meet the requirements of the eighth section of the act of July 2, 1864, the agents shall receive all cotton so brought, and forthwith return to the seller three-fourths thereof, which portion shall be an average grade of the whole, according to the certificate of a sworn expert or sampler.
 '5. All cotton purchased and resold by purchasing agents shall be exempt from all fees and all internal taxes. And the agent selling shall mark the same 'free,' and furnish to the purchaser a bill of sale clearly and accurately describing the character and quantity sold, and containing a certificate that it is exempt from taxes and fees as above.
 '6. Purchasing agents shall keep a full and accurate record of all their transactions, including the names of all persons from whom they make purchases, the date of the purchase, a description of the cotton purchased by them, and the quantity and quality thereof; also of the one-quarter retained by them. A transcript of this record will be transmitted to the Secretary of the Treasury on the first day of each month.
 '7. Sales of the cotton retained by the purchasing agents under regulation 4, as the difference between three-fourths the market price and the full price thereof in the city of New York, may be made by such agents, at such places and times and in such manner as may be directed in special instructions from the Secretary of the Treasury. Where such sales are not so authorized, the agents shall, without delay, ship it to New York on the best terms possible, consigned, until otherwise directed, to S. Draper, cotton agent and disbursing officer at that place. Bills of lading in triplicate for such shipment must be taken, one of which shall be sent to the agent at New York, one to the Secretary of the Treasury, and one retained by the purchasing agent.'
 On the 13th of June, 1865, the President of the United States signed a proclamation. So much of it as relates to any question involved in this suit is as follows:——
 'Now, therefore, be it known that I, Andrew Johnson, President of the United States, do hereby declare that all restrictions upon internal, domestic, and coastwise intercourse and trade, and upon the removal of products of States heretofore declared in insurrection, . . . heretofore imposed in the territory of the United States east of the Mississippi River, are annulled, and I do hereby direct that they be forthwith removed.'The court below found that, on the 12th of June, 1865, there arrived at New Orleans, on the steamer 'Grey Eagle,' from Vicksburg, one hundred and twenty-five bales of cotton, belonging to Samuel DeBow & Co.; at which time no shipments of cotton to New Orleans were allowed, except such as were consigned to the purchasing agent of the Treasury; that on the 13th of June, 1865, DeBow & Co. executed a bill of sale of all the cotton to that agent, at an expressed consideration of $9,625.98, and that the latter executed to them another bill of sale of all the cotton, at an expressed consideration of $12,834.64; that DeBow & Co. thereupon paid to said agent the difference, viz., $3,208.66, and received the cotton,—such interchanged bills of sale and payment being in fact one transaction, intended to be in compliance with the provisions of the act of July 2, 1864, and the treasury regulations thereunder of May 9, 1865, relating to the 'purchase of products of the insurrectionary States on government account;' that the treasury agent reported said amount of $3,208.66 as being 'twenty-five per cent retained on government account,' and that it was duly accounted for by him, and paid into the treasury; that, when the sale and resale took place, neither DeBow & Co. nor the treasury agent had knowledge of the President's proclamation of June 13, 1865, annulling restrictions upon trade east of the Mississippi; that DeBow & Co. were duly adjudicated bankrupts, and Emory E. Norton was appointed their assignee.
 The court thereupon found, as a conclusion of law, that 'the treasury agent in New Orleans, having control and possession of the claimant's cotton brought in from the east bank of the Mississippi, had no authority, on the 13th of June, 1865, to retain the same, or one-fourth thereof, nor to exact from the owner a payment equivalent to one-fourth of its value, under the act of July 2, 1864 (13 Stat. 375); and the owners should recover back the money so exacted in payment, it having been paid over to the defendant, and being now in the treasury.'
 Judgment having been rendered in favor of the claimant, the United States appealed to this court.
 The Attorney-General and Mr. Smith, Assistant-Attorney-General, for the appellant.
 It matters not whether the payment was voluntary or involuntary. If voluntary, it cannot be recovered in any court. Elliott v. Swartwout, 10 Pet. 137; Cunningham v. Monroe, 15 Gray (Mass.), 471; Ellston v. Chicago, 40 Ill. 518; Mayor v. Lefferman, 4 Gill (Md.), 436; Fellows v. School District, 39 Me. 561; Benson v. Monroe, 7 Cush. (Mass.) 125. That the payment, so far as any act upon the part of the treasury agent is concerned, was voluntary, is obvious. The cases cited by the appellee do not apply; for in each the party to whom the payment was made had either actual possession of the goods of the other party and refused to restore them, or an apparently legal process, under color of which he threatened to seize and detain them.
 The payment of an illegal tax before the issue of process for its enforced collection is so far voluntary that it cannot be recovered. Barrett v. Cambridge, 10 Allen (Mass.), 48; Forbes v. Appleton, 5 Cush. (Mass.) 117; Lee v. Templeton, 13 Gray (Mass.), 476; Walker v. Saint Louis, 15 Mo. 563, and cases cited; Christy v. Saint Louis, 20 id. 143; State v. Powell, 44 id. 436; Nickodemus v. East Saginaw, 25 Mich. 458.
 Even if the statute and the treasury regulations operated as a compulsion, they remained so no longer than they were in force. While in force, their compulsive effect was legal and proper. If, therefore, there was any misapprehension which led to the payment, it was a mistake of law. If the payment was involuntary, this suit to recover it must, if within the jurisdiction of the court below, be based upon some contract, express or implied, between the United States and the claimant. Gibbons v. United States, 8 Wall. 269; Rev. Stat., sect. 1059.
 There was confessedly no express contract on the part of the United States to take cotton, sell it for the owner, and return him the proceeds. No officer had the right to make the government a cotton-factor for individuals, and there was no such attempt. Nor can such a contract be implied; for the law will not assume that aught was done which could not have been done by express contract, or where the circumstances repel all implication of a promise in fact. Simpson v. Bowden, 33 Me. 552; Whiting v. Sullivan, 7 Mass. 107; Watson v. Stever, 25 Mich. 386.
 Non constat but that the act of Congress and the regulations were in force at the moment when the payment was made to the agent.
 Until the proclamation was signed, or delivered to the State Department, it was not merely his right, but his duty, to receive all cotton brought to him under existing law and regulations.
 This is one of the cases in which it becomes the duty of the plaintiff to show, and of the court to determine, at what hour of the day a law becomes operative. Gardner v. Collector, 6 Wall. 499.
 The approval, attested by the President's signing a bill, cannot look backwards, and by relation make that a law at any antecedent period of the same day which was not so before the approval. The law prescribes a rule for the future, not for the past. Ex parte Richardson, 2 Story, 580.
 The rule that the law knows no fractions of a day is one of convenience merely. Where the ends of justice require it, or conflicting interests are involved, the law will look into the fractions of a day as readily as into those of any other unit of time. Chick v. Smith, 8 Dowl. Pr. Cas. 340; Regina v. St. Mary, 1 El. & Bl. 827; Brainerd v. Bushnell, 11 Conn. 24; Lemon v. Staats, 1 Cow. (N. Y.) 594; Small v. McChesney, 3 id. 19; Rogers v. Beach, 18 Wend. (N. Y.) 533; Havens v. Dibble, id. 655; Clute v. Clute, 3 Denio (N. Y.), 264; Blydenburg v. Cotheal, 4 N. Y. 418; Jones v. Porter, 6 How. Pr. (N. Y.) 286; Grosvenor v. McGill, 37 Ill. 240; Ferris v. Ward, 9 id. 506; Tufts v. Carradine, 3 La. Ann. 431; Callihan v. Hallowell, 2 Bay (S. C.), 9; Ex parte Richardson, 2 Story, 577, citing Digges's Case, 1 Co. 174; Fitzwilliam's Case, 6 id. 33; Wrangham v. Hersey, 3 Wils. 274.
 The finding does not show at what hour the payment was made. If the horal divisions are not noticed, it must be presumed to have happened contemporaneously with the issuing of the proclamation. The crown, in such cases, has priority over the subject. Edwards v. Reginam, 9 Exch. 632.
 The claimant in this case must show that the money to which he says he is ex aequo et bono entitled was wrongfully obtained by the United States. It is a presumption of law that officials and citizens obey the law and do their duty; and although it cannot supply the place of proof of a substantive fact, he who disputes it must furnish the requisite evidence to overcome its effect. 2 Whart. Evid., sect. 1318, citing nearly forty cases; among them Ross v. Reed, 1 Wheat. 486; Phila., &c. Railroad Co. v. Stimpson, 14 Pet. 458; Minter v. Crommelin, 18 How. 88; United States v. Weed, 5 Wall. 62.
 An individual, as against another, can sue in assumpsit, when the tort, though the gist of the transaction, arises out of a contract (Stoyle v. Wescott, 2 Day (Conn.), 422; Buckley v. Storer, id. 531; Vasse v. Smith, 6 Cranch, 231); but no new jurisdiction can be thereby conferred. No court can take jurisdiction of the assumpsit but the one which can give the remedy on the tort itself. Mann v. Kendall, 2 Jones (N. C.), L. 193; Clark v. Dupree, 2 Dev. (N. C.) L. 411; Briggs v. Light-Boats, 11 Allen (Mass.), 157.
 The statutes conferring jurisdiction upon the court of claims exclude, by the strongest implication, demands upon the government, founded on torts committed by an officer in its service, and apparently for its benefit. Gibbons v. United States, 8 Wall. 269; Morgan v. United States, 14 id. 531. The restrictions they contain would be practically unllified, if in every case really dependent upon the tortious act of an officer, in which the government receives some incidental benefit, the tort could be waived, and the imagined assumpsit, founded only upon it, be made the basis of a suit. The provision limiting that court to matters of contract was based upon the theory that the State could do no wrong; that is, if it inadvertently inflicted wrong upon a citizen, redress would be given directly by Congress, and not through the instrumentality of a tribunal which renders judgment only upon judicial proof.
 Mr. Edward Janin, contra, cited Astley v. Reynolds, 2 Stra. 915; Close v. Phipps, 7 Man. & G. 586; Shaw v. Woodcock, 7 Barn. & Cress. 73; Atlee v. Backhouse, 3 Mee. & W. 633; Adams's Case, 1 Ct. Cl. 306; Boston & Sandwich Glass Co. v. City of Boston, 4 Metc. (Mass.) 181; Amesbury Woolen Co. v. Inhabitants of Amesbury, 17 Mass. 461; Preston v. City of Boston, 12 Pick. (Mass.) 7; Ripley v. Gelston, 9 Johns. (N. Y.) 201; Clinton v. Strong, id. 370; Moses v. Macferlan, 2 Burr. 1005; Atwell v. Zeluff, 26 Mich. 118; McKee v. Campbell, 27 id. 497; Wabaunsee County v. Walker, 8 Kan. 431; Wolf v. Marshall, 52 Mo. 167; Hendy v. Soule, Deady, 400; Lauman v. Des Moines County, 29 Iowa, 310; Hubbard v. Brainard, 35 Conn. 563; United States v. Lapeyre, 17 Wall. 191; Allen v. McKeen, 1 Sumn. 317.
 MR. CHIEF JUSTICE WAITE delivered the opinion of the court.
 
 
 1
 In our opinion, this case is governed by the decision in United States v. Lapeyre (17 Wall. 191), which, although not concurred in by all the justices then composing the court, is accepted as conclusive upon the questions involved.
 
 
 2
 Under the ruling in that case, the proclamation took effect as of the beginning of June 13, 1865, and, therefore, covers all the transactions of that day to which it is applicable. We do not think this is a case in which fractions of a day should be taken into account.
 
 
 3
 While the questions of whether payments made under the circumstances of this case were voluntary or not, or whether, if voluntary, being made under a mutual mistake of law, can be recovered back, were not considered in the opinions filed, it is clear that the judgment rendered could not have been given, unless they had been decided adversely to the United States.
 
 
 4
 Judgment affirmed.
 
 
 5
 NOTE.—United States v. Ceif's Assignee, United States v. Levy, United States v. Rowan, United States v. Yorke, United States v. White, United States v. Bonnafon, and United States v. Ethel's Assignee, appeals from the Court of Claims, were also submitted at the same time and by the same counsel as was the preceding case. The first four involved similar facts to that case. In the remaining cases, the cotton was shipped to New Orleans from 'States in insurrection' June 26 and June 27, 1865, and the payment made in ignorance of the President's proclamation of June 24, 1865. MR. CHIEF JUSTICE WAITE, in delivering the opinion of the court, remarked, that they were all governed by the decision in the immediately preceding case, and that the judgment in each case was.
 
 
 6
 Affirmed.