HOWELL et al. v. BIDWELL, Collector.

(Circuit Court, S. D. New York. August 8, 1903.)

1. CUSTOMS DUTIES—DATE WHEN PORTO RICO CEASED TO BE A FOREIGN COUNTRY—TAKING EFFECT OF TREATY.

The treaty with Spain by which Porto Rico was ceded to the United States became effective for tariff purposes at the beginning of April 11, 1899, on which day the ratifications were exchanged and the president's proclamation was issued, and merchandise arriving from Porto Rico at a port of entry of the United States at any time during that day was not subject to duty.

This is a demurrer to the complaint of the plaintiffs, who sue to recover $15,931.48 paid as duties on a cargo of sugar cleared from Porto Rico March 10, 1899, and entered at the port of New York, United States of America, at a quarter past 11 o'clock in the forenoon of April 11, 1899, and $19,493.51 paid as duties on another cargo of sugar cleared from Porto Rico April 4, 1899, and entered at the port of New York April 21, 1899. It is alleged these duties were illegally exacted by duress of goods, etc.

Henry M. Ward (F. R. Coudert, Jr., and Paul Fuller, of counsel), for plaintiffs.

Henry L. Burnett, U. S. Atty., and Henry C. Platt, Asst. U. S. Atty., for defendant.

RAY, District Judge. The demurrer is based on the grounds that as the sugars in question were cleared from Porto Rico while that island was still a foreign country, and subsequently actually entered at the port of New York, the importation commenced at the time when such cargoes cleared, and that the sugars were then charged with duty under the Dingley tariff act, although that act ceased to be operative on sugars imported after Porto Rico ceased to be a foreign country, and that as Porto Rico ceased to be a foreign country April 11, 1899, and both cargoes were cleared at Porto Rico prior to that date, the sugars were charged and remained charged with the duties exacted and paid, notwithstanding the fact that the importation was not concluded by arrival at the port of entry until after Porto Rico had ceased to be a foreign country. In short, the government claims that the importation commenced prior to April 11, 1899, and ended April 11th, and April 21st, as to each cargo, respectively, and that, within the meaning of the tariff law (Dingley Tariff Act, Act July 24, 1897, c. 11, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1626]) the importation is deemed to have taken place when commenced, and not when completed.

As to the first cargo, the question is presented whether or not the treaty between the United States and Spain is, for tariff purposes, and in the absence of proof to the contrary, deemed to have been in force during the entire day of April 11, 1899, or only from the hour of the exchange of the ratifications of the treaty of peace between the United States and Spain. This court has already held (Armstrong v. Bidwell, 124 Fed. 690, and American Sugar Refining Co. v. Bidwell, Id. 677, 683) that Porto Rico ceased to be a foreign

country, within the meaning of the tariff laws, on the 11th day of April, 1899, when the ratifications of the treaty of peace between Spain and the United States were exchanged at Washington, and such ratification was proclaimed, and that goods, wares, and merchandise are to be deemed imported, within the meaning and intent of such laws, on their arrival at the port of entry, and not before. This, so far as this court is concerned, disposes of the demurrer to the second cause of action set forth in the complaint. Facts sufficient to constitute a cause of action are there stated, and the demurrer as to that cause of action must be overruled.

The allegations of the first cause of action present an additional question. The ratifications were exchanged April 11, 1899, and on that day Porto Rico ceased to be a foreign country. The exchange of such ratifications was duly proclaimed by the President. For tariff purposes, did that island cease to be a foreign country at the beginning of that day, or at the hour and minute of that day when the ratifications were actually exchanged? If the first be true, then a good cause of action is stated, as Porto Rico in such case had ceased to be a foreign country when these sugars were imported; but, if the second be the truth, in law, then arises the next question, which is, must the complaint allege that the entry at New York was after the hour when the ratifications were exchanged?

When a new tariff law is enacted by the Congress of the United States, to take effect immediately, the court will inquire as to the exact hour when the new act became a law; and, if the goods were entered before that hour, duties will be assessed at the old rates, and not the new. United States v. Stoddard, Haserick, Richards & Co. (C. C.) 89 Fed. 699, affirmed 91 Fed. 1005, 34 C. C. A. 175; United States v. Iselin, 95 Fed. 1007, 36 C. C. A. 681. But the rule seems to be firmly established that, in the case of proclamations by the President, it covers the whole of the day on which it is made. United States v. Norton, 97 U. S. 164, 24 L. Ed. 907. In that case, held:

"(1) The proclamation of the President of June 13, 1865 (13 Stat. 763), annulling in the territory of the United States east of the Mississippi all restrictions previously imposed upon internal, domestic, and coastwise intercourse and trade, and upon the removal of products of states theretofore declared in insurrection, took effect as of the beginning of that day.

"(2) There was therefore on that day no authority, under the act of July 2, 1864 (13 Stat. 375), and the Treasury regulations of May 9, 1865, for retaining from the owner of cotton shipped to New Orleans from Vicksburg, Miss., one-fourth thereof, nor for exacting from him a payment equal in value to such one-fourth.

"(3) Lapeyre v. United States, 17 Wall. 191, 21 L. Ed. 606, reaffirmed."

Mr. Chief Justice Waite, in giving the opinion of the court, said:

"In our opinion this case is governed by the decision in Lapeyre v. United States, 17 Wall. 191 [21 L. Ed. 606], which, although not concurred in by all the justices then composing the court, is accepted as conclusive upon the questions involved. Under the ruling in that case, the proclamation took effect as of the beginning of June 13, 1865, and therefore covers all the transactions of that day to which it is applicable. We do not think this is a case in which fractions of a day should be taken into account."

The rule that courts disregard fractions of a day is not inflexible. The justice of the case is to be looked to. Porto Rico had passed

124 F.—44

under the control of and was in the possession of the United States. The treaty of peace, etc., had been signed and ratified by both the contracting parties. The ratifications were ready for delivery on the 11th day of April, and were actually exchanged. The President thereupon issued his proclamation announcing the facts. It would seem inequitable to hold that this exchange of ratifications did not cover the whole day. This court, after a consideration of all the authorities, is constrained to hold that Porto Rico ceased to be a foreign country at the beginning of the day, April 11, 1899. In point of fact, that island had passed from the sovereignty of Spain to that of the United States long before, and it would seem unnecessary to divide the day on which the transfer in law was actually completed. This is probably the rule in this case. Lapeyre v. United States, 17 Wall. 198, 21 L. Ed. 606. It is there said:

"There is no statute fixing the time when acts of Congress shall take effect, but it is settled that, where no other time is prescribed, they take effect from their date. Where the language employed is 'from and after the passing of this act,' the same result follows. The act becomes effectual upon the day of its date. In such cases it is operative from the first moment of that day. Fractions of the day are not recognized. An inquiry involving that subject is inadmissible. See Welman's Case [20 Vt. 653, Fed. Cas. No. 17,407], where the subject is examined with learning and ability."

It follows that when these sugars were entered at the port of New York they were not subject to the imposition of any duty, and that the first alleged cause of action is sufficient.

The demurrer must be overruled, with costs, and it is so ordered.