CHESTONIA TOWNSHIP v STAR TOWNSHIP
ORDWAY v STAR TOWNSHIP

Docket Nos. 250933, 255509. Submitted April 13, 2005, at Lansing. Decided May 17, 2005, at 9:00 a.m. Leave to appeal sought.

Chestonia Township brought an action in the Antrim Circuit Court against Star Township, seeking specific performance of a contract providing for the operation of a joint fire department. The contract specified that it would continue until both townships deemed it unfeasible and further specified that it could be terminated only upon the unanimous consent of both townships. Before Chestonia Township initiated its action, Star Township had brought an action for a declaratory judgment that the parties' agreement had terminated when the Star Township board adopted a resolution to withdraw from the agreement. The court in that earlier action had granted partial summary disposition for Chestonia Township after determining that the Star Township board resolution merely expressed a desire to terminate the agreement.

Stephen Ordway and other Star Township residents brought an action in the Antrim Circuit Court against Star Township and several of its officials, seeking an order of mandamus and injunctive relief to compel Star Township to comply with the agreement and to prevent the township from establishing an independent fire department. The action was assigned to the same judge as in the action by Chestonia Township.

The court, Thomas G. Power, J., ordered the termination of the operation of the joint fire department and the division of the assets of the department, determining that the contract was a perpetual contract that was void as against public policy, that the millages passed by the townships did not require the joint fire protection plan to continue for any set time, and that Star Township no longer had to pay tax receipts over to the board that operated the joint fire department. Chestonia Township and the plaintiffs in the Ordway action appealed, and the appeals were consolidated.

The Court of Appeals held:

1. In the action by Star Township, the court declined to address whether Star Township had the authority to withdraw

from the agreement. Res judicata does not apply to bar the trial court from addressing the issue in the action by Chestonia Township.

2. The trial court erred in determining that Star Township had the authority to withdraw from the operation of the contract because the agreement constituted a perpetual agreement that was void as against public policy. The contract was not perpetual in that it was not unlimited in term or would never cease. The agreement stated that it continued to operate until both townships deemed it unfeasible and that it could only be terminated by the unanimous consent of the townships. Because the agreement provided for its own termination, it was not a perpetual contract that was void as contrary to public policy. Star Township did not have the authority to unilaterally terminate the contract.

Reversed and remanded for further proceedings.

*Lester N. Turner, P.C.* (by *Lester N. Turner*), for the plaintiffs.

*Plunkett & Cooney, P.C.* (by *Michael T. Edwards*), for the defendant.

Before: FORT HOOD, P.J., and METER and SCHUETTE, JJ.

PER CURIAM. In this contract action, plaintiff township of Chestonia appeals by right the order terminating the operation of a joint fire department operated by the two parties and the order dividing the assets of that fire department. We reverse and remand. We do not retain jurisdiction.

I. FACTS

The parties to this case are two small neighboring communities in Antrim County. Plaintiff Chestonia Township has a population of approximately six hundred. Defendant Star Township has a population of approximately 750.

Since the 1940s, the two communities have operated a joint fire department. At least as early as 1974, the electorates of both townships voted to have their communities "join for the creation of a special assessment district for the purpose of providing fire protection for said joint fire district, and levy a special assessment" for the support and maintenance of the joint fire department. At that time, a five-member board was created to oversee the joint fire department and was given the name of the Alba Fire Board. From that time until the parties began legal action against one another in April 2002, the parties continued to operate the joint fire department in this manner: the Alba Fire Board ran the fire department, and the two townships maintained the joint fire district and voted millages for the expansion, maintenance, and operation of the joint fire department.

On January 1, 1985, the parties entered into what was apparently the first written agreement between the townships regarding the operation of the joint fire department. This agreement, entitled "Fire Board Agreement," was entered pursuant to MCL 124.2.[1] The agreement legally created a joint fire department, called the Alba Fire Department, and set out the terms governing the Alba Fire Board. The agreement provided that the contract between the parties would continue until both townships deemed it unfeasible. It further provided that the agreement between the parties could be extended, terminated, or amended only by the unanimous consent of both townships.

On September 1, 1999, the parties amended this agreement, under the name of "Fire Board Agreement (Amended)" (Amended Agreement), to permit members

---

[1] The 1985 agreement itself refers to this statute as Act No. 35, Public Acts of 1951.

of the board of either township to sit on the Fire Board as voting members. In all other respects the 1985 and 1999 agreements were identical.

Shortly after the Amended Agreement was signed, however, differences began to arise among the members of the two township boards of trustees. These differences included disagreements over expenditures, concerns over lack of accountability, differences over who should be appointed fire chief, concerns regarding insurance coverage for the joint fire department, and general personality conflicts. As a result of these differences, on January 30, 2002, the Star Township board passed a resolution purporting to withdraw from the Amended Agreement.

Subsequently, on April 8, 2002, Star Township filed a complaint[2] naming Chestonia Township as defendant. Star Township sought a declaratory ruling that its January 30, 2002, action had terminated the 1999 Amended Agreement and, thereby, had also terminated the existence of the Alba Fire Board. Star Township further requested the court to order an accounting, to make an equitable division of the joint Alba Fire Department's assets, and to order the return of revenues levied and collected pursuant to millages passed by Star Township for the purpose of providing fire protection.

Star Township then brought a motion for summary disposition. On October 14, 2002, the trial court heard arguments on this motion. At the conclusion of the hearing, the trial court found that there was no evidence that the January 30, 2002, action had actually terminated the agreement, because the motion passed by the township merely expressed its desire to terminate the agreement and not its intent to do so. Accord-

---

[2] The April 8, 2002, complaint was not the complaint filed in the instant suit.

ingly, the court granted partial summary disposition for
Chestonia Township. In so ruling, the court explicitly
left open the question whether Star Township had the
authority to unilaterally withdraw from the Amended
Agreement.

On November 14, 2002, the Star Township board
passed a resolution explicitly setting forth its intent to
withdraw immediately from the Alba Fire Board and
the Alba Fire Department. On January 13, 2003,
Chestonia Township filed a complaint claiming breach
of agreement. Chestonia Township sought specific per-
formance of the Amended Agreement and damages for
Star Township's breach. Trial was held on June 24 and
25, 2003.

At the conclusion of trial, the trial court made the
following findings and rulings. First, the court noted
that the question whether Star Township had the right
to unilaterally withdraw from the Amended Agreement
had not been considered by the court during the first
action between the parties. Accordingly, the court con-
cluded that the doctrine of res judicata did not preclude
the present action. Next, the court concluded that the
Amended Agreement essentially constituted a per-
petual contract. Therefore, the court concluded that the
Amended Agreement was void as against public policy.
The court also concluded that the language of the
various millages passed by the two townships to provide
for fire protection for their communities did not require
the joint fire department to continue for any set length
of time and that Star Township was not required to
continue paying over the revenue from the fire protec-
tion millages passed by its residents past a reasonable
period. It found this reasonable time to end with the
payment of any unpaid revenues levied through Decem-
ber 31, 2002, including any delinquent taxes owed from

that period. Finally, the court ordered the parties to submit proposals regarding the liquidation and distribution of the Alba Fire Board assets. The court entered an order reflecting these rulings on July 17, 2003.

Following a hearing on the question of the liquidation and distribution of the Alba Fire Board's assets, on September 3, 2003, the court entered an order awarding Star Township ⅔ and Chestonia Township ⅓ of the value of the assets of the Alba Fire Department. In this order, the court further awarded to Chestonia Township any remaining funds held by the Alba Fire Board. The court also made specific distributional rulings concerning certain of the Alba Fire Department assets.

## II. RES JUDICATA

Plaintiff argues that the trial court erred when it held that the partial summary disposition order and the stipulation and order of dismissal in the first action between the parties was not a determination on the merits and that, therefore, the doctrine of res judicata did not apply. The trial court did not err.

### A. STANDARD OF REVIEW

The applicability of res judicata is a question of law, which is reviewed de novo. *Adair v Michigan,* 470 Mich 105, 119; 680 NW2d 386 (2004).

### B. ANALYSIS

In the first case between the parties, Star Township specifically placed before the court the question whether it had the authority to withdraw from the Amended Agreement, but the trial court declined to rule on the issue. Therefore, this claim was neither litigated, nor could it have been litigated in the first action between the parties.

Res judicata bars a subsequent action between the same parties when the facts or evidence essential to the action are identical to those essential to a prior action. *Sewell v Clean Cut Mgt, Inc,* 463 Mich 569, 575; 621 NW2d 222 (2001). Res judicata bars litigation in the subsequent action of not only those claims actually litigated in the first action, but also those claims arising out of the same transaction that the parties, by exercising reasonable diligence, could have litigated but did not. *Adair, supra* at 121.

In the first action between the parties, the trial court declined to rule on the question whether Star Township had the authority to unilaterally terminate the Amended Agreement. Therefore, this issue was not actually litigated in the first action. Moreover, this is not a situation in which a claim that could have been brought and litigated in the first action was not. In fact, in the original case, Star Township did bring the claim challenged here by plaintiff. However, the trial court then elected not to rule on the issue. Accordingly, the doctrine of res judicata does not apply to this case. As a result, the trial court did not err in so finding.

### III. UNILATERAL TERMINATION OF CONTRACT

Plaintiff argues that the trial court erred when it found that Star Township could unilaterally terminate the Amended Agreement between the parties and in finding the agreement void as against public policy. We agree.

#### A. STANDARD OF REVIEW

This Court reviews de novo questions of contract interpretation. *Morley v Automobile Club of Michigan,* 458 Mich 459, 465; 581 NW2d 237 (1998).

### B. ANALYSIS

On January 1, 1985, the parties entered into the Fire Board Agreement. The parties amended this agreement on September 1, 1999. The Amended Agreement, in paragraph 1, provided: "This agreement shall commence on the date here in [sic] and continue until both Townships deem it unfeasible." The Amended Agreement further provided, in paragraph 12, "This agreement may be extended, terminated, or amended by the unanimous consent of the Townships."

Both the 1985 agreement and the 1999 agreement were entered into pursuant to MCL 124.1 *et seq.*, which authorizes and prescribes, in part, intergovernmental contracts between municipal corporations. MCL 124.2 provides as follows:

> Any municipal corporation shall have power to join with any other municipal corporation, or with any number or combination thereof by contract, or otherwise as may be permitted by law, for the ownership, operation, or performance, jointly or by any 1 or more on behalf of all, of any property, facility or service which each would have the power to own, operate or perform separately.

MCL 124.1(a) defines "municipal corporation," for the purposes of MCL 124.2, as including townships.

In April 2002, Star Township (defendant here) brought suit requesting, among other things, that the court find that it had the right to unilaterally terminate the Amended Agreement. The court granted summary disposition to Chestonia Township (plaintiff here) on another basis and never reached this question. When Chestonia Township filed the present case in January 2003, defendant then brought a countercomplaint again raising this question.

At the conclusion of the trial, the court concluded that defendant had the authority to unilaterally terminate the Amended Agreement because the agreement constituted a perpetual agreement and such agreements are void as against public policy. We find that the Amended Agreement is not a perpetual agreement. Neither party nor the trial court has cited any legal authority defining what constitutes a perpetual contract, and we have found no case law providing such a definition.[3] Black's Law Dictionary (6th ed), however, defines "perpetual" as "[n]ever ceasing; continuous; enduring; lasting; unlimited in respect of time; continuing without intermission or interval." It further defines the term "in perpetuity" as meaning of "[e]ndless duration; lasting; forever."

The Amended Agreement does not state that it is unlimited or never to cease. Rather, the Amended Agreement states, "This agreement shall commence on date here in [sic] and continue *until* both Townships deem it unfeasible." (Emphasis added.) Our Supreme Court addressed a similar issue and found that a contract stating that it would "remain in 'full force and effect indefinitely, unless terminated at an earlier date'" had a definite term because use of the word *unless* provided a means for termination. *Lichnovsky v Ziebart Int'l Corp*, 414 Mich 228, 240; 324 NW2d 732 (1982). The contract here contains a similarly limiting

---

[3] The term "perpetual contract" is found in two published Michigan cases—both from the nineteenth century. In *Lewis v Weidenfeld*, 114 Mich 581, 594; 72 NW 604 (1897), our Supreme Court simply reported that a witness had testified that a contract "was perpetual, because it was based upon a perpetual contract." In *Horner v Eaton Rapids*, 122 Mich 117, 121; 80 NW 1012 (1899), our Supreme Court used the term "perpetual contract," but apparently used it as a synonym for "permanent contract." Neither case made any apparent attempt to define the term.

provision: the Amended Agreement may terminate when both parties believe the continuation of the agreement is not feasible.

An analysis under general principles of contract interpretation arrives at the same result. The primary "goal of contract interpretation is to enforce the parties' intent." *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004). Where the language used is clear, interpretation and enforcement are limited to that language. *Id*. at 656-657. Parties are presumed to understand and intend what the language employed clearly states. *Id*. at 656. Therefore, this Court enforces a contract as written if there is only one possible interpretation. *Morley, supra* at 465.

Here, as noted, the contract clearly provides that it is to continue until both townships deem it unfeasible, and it is terminable only "by the unanimous consent of the Townships." The only possible interpretation is that Star Township therefore lacked the authority to unilaterally terminate the Amended Agreement.

IV. REMAINING ISSUES

In light of our decision in the previous issue, we need not decide whether the trial court erred in allowing the Star Township board to divert tax revenues to be used for an independent Star Township fire department and not for the joint fire district, or decide whether the trial court erred in failing to apply the doctrine of equitable estoppel to require the enforcement of the Amended Agreement between the parties.

Reversed and remanded for proceedings consistent with this opinion.