CRYSTAL LAKE PROPERTY RIGHTS ASSOCIATION
v BENZIE COUNTY

Docket No. 272587. Submitted February 6, 2008, at Lansing. Decided
    September 11, 2008, at 9:00 a.m. Leave to appeal sought.

The Crystal Lake Property Rights Association, composed of owners
    of property near Crystal Lake, brought an action in the Benzie
    Circuit Court against Benzie County and the Department of
    Natural Resources (DNR), seeking declaratory and injunctive
    relief against the construction of a public boat launch on Crystal
    Lake and near the Betsie Valley Trail. The plaintiff alleged that
    the boat launch would be in violation of a Benzie County ordinance
    governing the Betsie Valley Trail, as well as the terms of the
    settlement agreement that disposed of a class action by certain
    property owners against the Department of Transportation con-
    cerning the trail. The court, James M. Batzer, J., granted summary
    disposition for the DNR, agreeing with the DNR that it only had to
    comply with MCL 324.78114, and therefore was not subject to the
    county ordinance, in constructing the boat launch, and that the
    boat launch was not prohibited under the terms of the settlement
    agreement. The plaintiff appealed.

    The Court of Appeals held:

    1. Legislative intent is the test for determining whether a
governmental unit is immune from the provisions of local zoning
ordinances. It is not necessary for the Legislature to use any
particular talismanic words to indicate its intent with regard to a
zoning exemption. Nothing in MCL 324.78114, which governs the
acquisition of land by the DNR for use as public-access boat
launches, indicates that the DNR has exclusive jurisdiction over
the placement of public-access boat launches. MCL 324.78114 can
be reasonably construed as merely requiring the DNR to follow
specific procedures to involve local government in creating a
public-access boat launch. Accordingly, the DNR is not exempt
from local zoning ordinances when establishing a public-access
boat launch.

    2. The settlement agreement does not preclude the DNR from
building the proposed boat launch. By acquiring property that
abuts the trail, the DNR became an adjoining property owner

under the terms of the settlement and is entitled to the same rights as other adjoining property owners, including access and use rights to the trial in any way that does not conflict with the trail easement as specified in the settlement agreement.

Affirmed in part, reversed in part, and remanded for further proceedings.

MURRAY, J., concurred with the majority's decision, but expressed his belief that the DNR violated the spirit, intent, and purpose of the trail-use plan incorporated in the settlement agreement. Under that plan, the DNR may not ease or eliminate any limitations or restrictions of the plan. One such restriction is that nonresident trail users are to enter the trail only at two specified trail-heads. The proposed public-access boat launch will lead to an access point not contemplated by the plan.

MUNICIPAL CORPORATIONS — ORDINANCES — PUBLIC-ACCESS BOAT LAUNCHES — DEPARTMENT OF NATURAL RESOURCES.

The Department of Natural Resources is not exempt from local ordinances when establishing public-access boat launches (MCL 324.78114).

*Gockerman, Wilson, Saylor & Hesslin, P.C.* (by *Richard M. Wilson, Jr.*), for the Crystal Lake Property Rights Association.

*David J. Bedells, P.C.* (by *David J. Bedells*), for Benzie County.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Harold J. Martin*, Assistant Attorney General, for the Department of Natural Resources.

Before: MARKEY, P.J., and METER and MURRAY, JJ.

METER, J. This case involves a proposal by defendant Department of Natural Resources (DNR) to construct a public-access boat launch on Crystal Lake in defendant Benzie County. Plaintiff, Crystal Lake Property Rights Association, is composed of owners of property in the

vicinity of the proposed boat launch, and it sued to stop the construction of the boat launch. The trial court, in granting the DNR's subsequent motions for summary disposition, rejected plaintiff's attempt to stop the construction. Plaintiff appeals as of right, and we affirm in part, reverse in part, and remand for further proceedings. We hold that the DNR's project is subject to the county zoning ordinance, despite the DNR's compliance with MCL 324.78114, a provision of the waterways commission act, MCL 324.78101 *et seq.*, contained in part 781 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.* We also hold that an earlier settlement involving a trail running adjacent to Crystal Lake does not prohibit the proposed boat launch.

I. BACKGROUND FACTS

In October 1996, a settlement was reached in a class action brought by certain property owners against the Michigan Department of Transportation (DOT) with respect to their claim of title to a railroad right-of-way running along the south shore of Crystal Lake. Under the settlement, the DNR was entitled to a permanent easement for a ten-foot-wide public trail, subject to limitations and restrictions set forth in the settlement and the DOT's superior right to resume rail use within the easement. The trail, a segment of a larger trail known as the Betsie Valley Trail, was to be "operated and used in a manner that does not disrupt the lives of the adjoining property owners or diminish their opportunity to use and enjoy the waterfront or place unreasonable restrictions on use of the trail by the public." In November 1996, the trial court entered a judgment based on the settlement.

In late 2001 and early 2002, the DNR took steps to acquire property fronting Crystal Lake for a public-access boat launch on land that abuts the Betsie Valley Trail. Under the DNR's plan, boaters would drive to the property, back up their vehicles and trailers to launch their boats into the lake, and then park the vehicles and trailers in a parking lot. The plan provided for four launch ramps and 100 parking spaces. Other planned features included a staging area with benches, toilets, and bicycle racks. It was anticipated that some individuals using the Betsie Valley Trail would stop at the planned facility, but the intent was to have the planned facility serve as a boat launch.

In May 2002, the state acquired 20 acres of property to be used for the boat launch. Earlier, between December 2001 and February 2002, the Benzie County Board of Commissioners and the Benzonia Township Board expressed approval of the development, but had no interest in acquiring the land. In May 2004, the Michigan Department of Environmental Quality (DEQ) issued a permit to the DNR to allow construction of a "public boat launch." The permit specified, in part, that it did not waive the necessity of seeking "federal assent [and] all local permits or complying with other state statutes."

In June 2004, plaintiff filed the instant action for declaratory and injunctive relief against Benzie County and the DNR. Plaintiff alleged in counts I and II of its amended complaint that Benzie County violated the former County Zoning Act, MCL 125.201 *et seq.*,[1] and due process and equal protection rights by allowing

---

[1] Effective July 1, 2006, the County Zoning Act and other zoning acts were repealed by 2006 PA 110 and replaced by the Michigan Zoning Enabling Act, MCL 125.3101 *et seq.* MCL 125.3702 lists the repealed acts, but provides in subsection 2:

property acquired by governmental units to be rezoned to district "G," a designation that permits the governmental unit to determine the appropriate land use without a public hearing. Count III alleged that the DNR violated the earlier settlement. Count IV alleged that the DNR violated a Betsie Valley Trail ordinance adopted by Benzie County in 2002. Count V alleged that the proposed public boating access site would violate the Michigan environmental protection act, MCL 324.1701 *et seq.*, but conceded that an administrative proceeding on this claim was pending.[2]

The DNR moved for summary disposition before the filing of the amended complaint. It argued that plaintiff's challenge to the district "G" provisions in Benzie County's zoning ordinance was baseless and, in any event, it was not subject to the zoning ordinance pursuant to MCL 324.78114. Further, the DNR argued that it did not violate the earlier settlement or the Betsie Valley Trailway ordinance. Benzie County later joined in the DNR's motion, but declined to stipulate that the DNR is not subject to county zoning ordinances.

Plaintiff then moved for partial summary disposition with respect to whether the DNR's proposed public-access boat launch is subject to local zoning control. The trial court determined that the evidence established that the DNR had complied with MCL 324.78114. It

This section does not alter, limit, void, affect, or abate any pending litigation, administrative proceeding, or appeal that existed on June 30, 2006 or any ordinance, order, permit, or decision that was based on the acts repealed under subsection (1). The zoning ordinance need not be readopted but is subject to the requirements of this act, including, but not limited to, the amendment procedures set forth in this act.

[2] Count V was dismissed without prejudice so that plaintiff could pursue administrative remedies. It is not at issue in this appeal.

mentioned, in dicta, that Benzie County's zoning ordinance was unconstitutional with respect to district "G," but held that the zoning ordinance simply did not apply to the DNR as long as it complied with MCL 324.78114. It granted the DNR's motion with respect to counts I and II. During later proceedings, it also granted summary disposition to the DNR with respect to counts III and IV.

## II. THE DNR'S PROJECT IS SUBJECT TO LOCAL ZONING

Plaintiff argues that the trial court erred in ruling that the DNR was exempt from local zoning ordinances. We review a trial court's decision to grant summary disposition de novo and do the same for the interpretation and application of a statute. *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 243; 704 NW2d 117 (2005).

In *Burt Twp v Dep't of Natural Resources*, 459 Mich 659, 661, 664; 593 NW2d 534 (1999), the Supreme Court held that the DNR was required to comply with the local zoning ordinance, which had been adopted pursuant to the former Township Rural Zoning Act (TRZA), MCL 125.271 *et seq.*, in constructing a public-access boat launch. It declined to hold that the NREPA exempted the DNR from local zoning laws. *Burt Twp, supra* at 671. In the present case, the trial court held that 1998 PA 210, which enacted MCL 324.78114, a provision of the NREPA, "implicitly overruled" *Burt Twp*.[3] The trial court concluded that as long as the DNR complied with MCL 324.78114, it could construct a public-access boat launch without being subject to the local zoning ordinance.

---

[3] 1998 PA 210 was enacted before *Burt Twp* was decided. However, the amendments were not applicable to *Burt Twp* because of their effective date. See *Burt Twp, supra* at 668 n 9.

In *Burt Twp, supra* at 663, the Court, quoting *Dearden v Detroit*, 403 Mich 257, 264; 269 NW2d 139 (1978), indicated that " 'the legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances.' " The Court ultimately concluded:

> In sum, the NREPA and the TRZA appear to provide coextensive statutory rights concerning the protection of natural resources in general and the development of recreation facilities and other waterfront developments in particular. Moreover, nothing in the NREPA establishes a clear expression of legislative intent to exempt the DNR's activities in this case from the Burt Township zoning ordinance. Accordingly, for all the reasons stated, we hold that the DNR, in the construction of its public-access boat launch, is subject to Burt Township's zoning ordinance. The decision of the Court of Appeals is affirmed. [*Burt Twp, supra* at 671.]

1998 PA 210 added the following language to the NREPA:

> (1) Prior to acquiring a public boating access site, the department shall obtain a 90-day option on the land proposed for acquisition. In obtaining this option, the department shall attempt to negotiate an option that may be transferred to a local unit of government. Upon placing the option on the land, the department shall notify the municipality and the county in which the land is located of the option and whether the department plans to hold a public hearing on the proposed purchase and development of the land as a public boating access site. The municipality or county in which the proposed public boating access site is located may hold a public hearing on the proposed purchase and development of the land as a public boating access site. If a municipality or county holds a public hearing under this subsection, the municipality or county shall notify the department, and a representative of the department shall attend the public hearing.

(2) During the 90-day period in which the department holds an option under subsection (1), the municipality or county in which the land is located may do either of the following:

(a) Notify the department that it intends to operate a public boating access site on that land. If the department receives a notice pursuant to this subdivision, the department shall transfer the option, if possible, to the municipality or county so that it may exercise the option and purchase the land. If the municipality exercises the option and purchases the land, the exercise of the option shall be contingent upon the municipality or county and the department entering into a legally enforceable agreement that specifies how the public boating access site will be operated. The agreement shall provide that the public boating access site will be operated in the same manner as a public boating access site that is operated by the department, unless the department agrees to alternative terms. The agreement shall also provide that if the municipality or county violates the agreement, the department may operate the public boating access site in compliance with the agreement.

(b) Identify another suitable location on the lake that the department could acquire for a public boating access site. The public boating access site shall be comparable for development as the one proposed by the department. [MCL 324.78114.]

The DNR argues, and the trial court held, that this amendatory language evidences a legislative intent to exempt the DNR from local zoning laws. We disagree. It is true that in *Burt Twp*, *supra* at 669, the Court stated that it was not necessary that the Legislature use "any particular talismanic words to indicate its intent [with regard to a zoning exemption]. The Legislature need only use terms that convey its clear intention that the grant of jurisdiction given is, in fact, exclusive." However, we find no language within MCL 324.78114 or, for that matter, within the rest of 1998 PA 210, indicating

that the DNR has exclusive jurisdiction in the placement of public-access boat launches. Significantly, MCL 324.78114(2)(a) does not purport to exempt the DNR from local zoning requirements, but only requires that the site be operated in a manner agreed to by the parties. Zoning ordinances are concerned with the use of property. *Dearden v Detroit*, 403 Mich 257, 267; 269 NW2d 139 (1978). Further, there is nothing in MCL 324.78114 that requires the DNR to exercise the option to purchase property, regardless of what the local unit of government elects to do. However, at the end of the 90-day option process, the DNR should know how its proposal is viewed in the municipality or county and what steps would be necessary for it to pursue the matter further. MCL 324.78114 can be reasonably construed as merely requiring that the DNR, in creating a public-access boat launch, follow specific procedures to involve local government.

In addition, the Legislature, when passing laws, is presumed to be aware of judicial interpretations of existing law. *Ford Motor Co v Woodhaven*, 475 Mich 425, 439-440; 716 NW2d 247 (2006). There is nothing in the amendatory act that establishes a clear expression of legislative intent to modify this Court's conclusion in *Burt Twp* (before it was affirmed by the Supreme Court)[4] that the NREPA did not serve to exempt the DNR from the local zoning ordinance.

This case differs from *Byrne v Michigan*, 463 Mich 652, 657-658, 660; 624 NW2d 906 (2001), in which the Supreme Court found that legislation enacted after a judicial decision to enjoin the Michigan State Police from constructing a communications tower clearly expressed a legislative intent to exempt the Michigan

---

[4] See *Burt Twp v Dep't of Natural Resources*, 227 Mich App 252, 258-260; 576 NW2d 170 (1997).

State Police from local zoning ordinances. Similar to the amended act at issue in this case, MCL 28.282 (the statute at issue in *Byrne*) entitles a local unit of government to notice of the site selection. *Byrne, supra* at 660. However, unlike in this case, the Legislature in MCL 28.282 required that the local unit of government have zoning authority and specified a clear outcome, namely, that the Michigan State Police "may proceed with construction" in the event that the local unit of government does not grant a special use permit or propose an alternative, workable site. *Byrne, supra* at 660-661.

The present case also differs from *Dearden, supra* at 265-267, in which our Supreme Court determined that the Legislature's use of language in the corrections code, MCL 791.201 *et seq.*, such as "exclusive jurisdiction," MCL 791.204, and the broad vesting of powers in the Michigan Corrections Commission over "all matters related to the unified development of the penal institutions," former MCL 791.202, were evidence that "the Legislature intended to grant the Department of Corrections immunity from local zoning ordinances when establishing state penal institutions." Similarly, in *Northville Charter Twp v Northville Pub Schools*, 469 Mich 285, 290-291 (TAYLOR, J., joined by CORRIGAN, C.J., and YOUNG, J.), 298-299 (CAVANAGH, J., joined by KELLY, J.), 302 (WEAVER, J.); 666 NW2d 213 (2003), there was "sole and exclusive jurisdiction" language in MCL 380.1263; the Supreme Court considered this language in holding that the state superintendent of public instruction has sole and exclusive jurisdiction over school construction and site plans and is not subject to local zoning ordinances. Also, in *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 703, 711; 664 NW2d 193 (2003), the Court, in determining whether the defendant was required to comply with local zoning ordi-

nances in selecting the site of a homeless shelter, emphasized that MCL 46.11 empowers a county board of commissioners to determine the site of county buildings, with only one limitation, relating to "any requirement of law that the building be located at the county seat." The Court concluded that the Legislature intended no other limitation. *Pittsfield Charter Twp*, *supra* at 711. A similar situation is not present in the instant case.

There is simply no basis for concluding that the DNR is exempt from local zoning ordinances if it complies with MCL 324.78114, and therefore we reverse the trial court's ruling.[5]

### III. THE EARLIER SETTLEMENT DOES NOT PROHIBIT THE PROPOSED BOAT LAUNCH

Plaintiff next contends that the trial court erred in granting summary disposition with regard to its claim that the final judgment in the earlier lawsuit prohibits construction of the DNR's proposed boat launch. Specifically, plaintiff asserts that the proposed boat launch would violate the settlement reached in that lawsuit by allowing non-boaters to enter the trail from the boat launch, by having bicycle racks and other amenities in anticipation that trail users will be present, and by creating a new public access area to the lake from the trail. The DNR counters that because it acquired property adjoining the trail, its use of that property to

---

[5] We remand this case for further proceedings. Although the trial court expressed disapproval of the portion of Benzie County's zoning ordinance relating to district "G," we conclude that it did not conclusively render declaratory relief with respect to the constitutionality of the ordinance; it essentially concluded that the issue was moot. This conclusion is bolstered by the fact that the parties do not address the substance of this issue in their appellate briefs. Presumably, this will be an issue the parties will revisit on remand.

provide a boat launch is protected under the portion of the settlement governing "adjoining property owners."

We affirm the lower court's decision. Settlement agreements are generally construed in the same manner as contracts. *Michigan Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 484; 637 NW2d 232 (2001). "The primary goal of contract interpretation is to enforce the parties' intent." *Chestonia Twp v Star Twp*, 266 Mich App 423, 432; 702 NW2d 631 (2005) (citation and quotation marks omitted).

The settlement provided that "all adjoining property owners, their guests and invitees shall at all times have free and direct access over the trail easement on their respective properties." It further provided that property owners could use their property in any way "not inconsistent with said easement."

The settlement also included a "Special Trail Use and Law Enforcement Plan" (the Plan) to govern the use of the trail easement by any person; the Plan was to be enforced by the DNR, Benzie County, and local organizations. The settlement acknowledged that the DNR's enforcement duty lay "primarily in controlling usage by the general public and not the usage of adjoining property owners, their guests or invitees." The Plan's stated purpose was to ensure that the trail would be used in a manner that "does not disrupt the lives of the adjoining property owners or diminish their opportunity to use and enjoy the waterfront or place unreasonable restrictions on use of the trail by the public." The Plan set forth a series of special restrictions on the trail, two of which are pertinent to this appeal:

> Except for adjacent property owners, trail users must stay on the trial surface and shoulders. Entrance to this portion of the trail by non-resident trail users shall be only

at the trail-heads at Benzie Boulevard/Spring Valley Drive in the Village of Beulah on the east, at Mollineaux Road on the west, or other designated public access areas. Trailhead parking will be designated, with appropriate signage, at the two trailheads.

\* \* \*

There will be no toilet facilities, drinking fountains, telephones, picnic tables, no hunting, fishing, camping, picnicking or vending and no public access to the Crystal Lake waterfront or docks except as specifically allowed in designated public areas.

Plaintiff contends that construction of the boat launch would violate these two restrictions by essentially creating a new public access area, without any amendment of the agreement. In ruling on this argument below, the trial court found that the special restrictions in the Plan applied only to the trail and not to adjacent land. The court acknowledged that although the DNR was not prohibited by the settlement from constructing a boat launch on its property, it would still have to control public use of the trail from the launch. The court presumed that public officials would perform that responsibility properly.

We agree with the trial court's analysis that the settlement does not preclude the DNR from building the proposed boat launch. By acquiring property that abuts the trail, the DNR became an adjoining property owner under the settlement and is entitled to the same rights as other property owners, because the settlement provides no exception for governmental entities that become landowners. As an adjoining landowner, the DNR may allow its own guests and invitees to access that part of the trail located on its property and use its property in any way that does not conflict with the trail

easement. The restrictions within the Plan apply only to the trail itself, and not to the activities of adjoining landowners.

Also, we do not find that the DNR's boat launch would create a new "designated public area." According to the Plan's use of the term, designation occurs when an area is specified for particular uses and signage is authorized to communicate the designation to trail users. There is simply no evidence that the proposed boat launch will be marked by the DNR for any use associated with the trail. Plaintiff does question whether the DNR will be able to control trail usage associated with the boat launch so that it does not interfere with the rights of neighboring property owners. However, "[i]t is presumed that public officers perform their official duties." *Glavin v State Hwy Dep't*, 269 Mich 672, 675; 257 NW 753 (1934).

The trial court correctly determined that the earlier settlement does not prohibit the proposed boat launch.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

MARKEY, P.J., concurred.

MURRAY, J. (*concurring*). I concur with the majority's decision. I am not convinced that what the Department of Natural Resources has done is in violation of the technical terms of the amended settlement agreement,[1] and it is our judicial duty to enforce the plain language of the agreement. However, this result does not sit well with me because, after reading the entire Special Trail Use and Law Enforcement Plan incorporated in the

---

[1] The agreement also had attached and incorporated to it a Special Trail Use and Law Enforcement Plan.

agreement, it seems clear to me that the DNR is violating the spirit, intent, and purpose of the plan, albeit not its plain language.

As detailed in the majority opinion, in 1996 the parties entered into an agreement that resolved their dispute and set forth in great detail the respective rights, duties, and obligations of the parties to the agreement. A settlement agreement is construed like a contract, *Gramer v Gramer*, 207 Mich App 123, 125; 523 NW2d 861 (1994), and therefore it must be " ' "construed so as to give effect to every word or phrase as far as practicable." ' " *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003), quoting *Hunter v Pearl Assurance Co Ltd*, 292 Mich 543, 545; 291 NW 58 (1940), in turn quoting *Mondou v Lincoln Mut Cas Co*, 283 Mich 353, 358-359; 278 NW 94 (1938).

As the agreement recognizes, the primary duty of the DNR is to control usage of the trail by the *general public*, and to not control "the usage of adjoining property owners, their guests and invitees." The agreement specifically provides that the DNR "may under no circumstances ease or eliminate any limitations or restrictions imposed by the Plan, except through amendment of the Plan in the manner specified by the Plan." With respect to limitations and restrictions, section D, subsection 3, indicates the following restrictions on public access to the trail[2]:

> Except for adjacent property owners, trail users must stay on the trail surface and shoulders. *Entrance to this portion of the trail by non-resident trail users shall be only at the trail-heads at Benzie Boulevard/Spring Valley Drive*

---

[2] The agreement indicates that the trail will be 10 feet wide, with an eight-foot wide portion for use with a one-foot berm on each side of the trial. Thus, the actual portion of the trail to be used by the public and adjoining landowners for bicycling, hiking, etc., is eight feet wide.

*in the village of Beaulah on the east, at Mollineaux Road on the west, or other designated public access areas.* Trailhead parking will be designated, with appropriate signage, at the two trailheads.

As already noted, I do not doubt the DNR's ability, as a property owner, to use its property as it sees fit, as long as it is consistent with local zoning ordinances and the plan. And I do not doubt the credibility of the DNR officials who indicate that signs will be posted at the launch to inform the public that the trail is not accessible from that location. However, it is certainly likely that the public, when using the boat launch, which has a large parking lot, bicycle rack, and other facilities, will decide to use the trail from that location rather than driving off to another location and getting on the same trail. In other words, although we must presume that the public will obey the law, see *United States v Norton,* 97 US 164, 168; 24 L Ed 907 (1877), and *DeVries v Owens,* 295 Mich 522, 525; 295 NW 249 (1940), we also know that many will either conveniently ignore a sign, or simply miss the sign, and enter the trail. Thus, without being able to set aside some well-founded skepticism, it seems to me that establishment of the public boat launch will create a third public access point. And, although not in violation of the plain terms of the agreement, the end result is disappointing in that it arises from the state agency that is to restrict public access to the trail as outlined in the plan.[3]

---

[3] Although not raised by the parties, it also seems to me that the undefined terms "public" and "guests and invitees" are not synonymous, but instead refer to different groups. The plan envisions the DNR controlling public access to the trail, while leaving alone adjoining property owners and their guests and invitees. Throughout the plan there are references to the "public" and "public access," which I take to be a reference to the general public, the masses. The reference is usually

made in regard to where non-property owners, or those who are not guests or invitees of property owners, can access the trail. But, after the DNR's actions, the "public" is now considered the same as a private property owner's "guests or invitees."