*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

## STATE OF MICHIGAN

## COURT OF APPEALS

CITY OF DETROIT,

Plaintiff-Appellee,

v

EASTSIDE DETROIT ELDERLY LIMITED
DIVIDEND HOUSING ASSOCIATION LIMITED
PARTNERSHIP, KATHY S. MAKINO-LEIPSITZ,
MARK LEIPSITZ, and SHELBORNE
DEVELOPMENT COMPANY, LLC,

Defendants-Appellants.

UNPUBLISHED
March 24, 2026
12:25 PM

No. 373303
Wayne Circuit Court
LC No. 22-002612-CH

Before: PATEL, P.J., and SWARTZLE and MARIANI, JJ.

PER CURIAM.

Following a bench trial, defendants appeal by right the judgment in favor of plaintiff on its claims for breach of contract, common-law conversion, and statutory conversion. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This lawsuit stems from defendant Eastside Detroit Elderly Limited Dividend Housing Association Limited Partnership's (Eastside Detroit Elderly LDHALP) breach of a 2004 development and loan agreement that it entered into with plaintiff, city of Detroit (the city), relating to the construction of low-income housing for senior citizens on the subject property located at 12801 Mack Avenue in Detroit. The city loaned Eastside Detroit Elderly LDHALP $1,428,000 for the construction of the project, which was secured by a mortgage on the property to the city.

The loan agreement, payment note, and mortgage included a number of conditions. Relevant to this appeal, Eastside Detroit Elderly LDHALP was required to make monthly interest-only payments beginning on July 1, 2005, and continuing through the loan's maturity date of June 1, 2025, at which time the entire outstanding principal balance was due with all accrued and

-1-

unpaid interest.[1]  Eastside Detroit Elderly LDHALP was also required to obtain the city's written consent prior to any sale, assignment or transfer of the project or a controlling interest in Eastside Detroit Elderly LDHALP.  In addition, Eastside Detroit Elderly LDHALP was required to maintain fire and hazard insurance on the property for the full price of the project, which was $8,328,000.  The city was to be named as an additional insured on all policies and a loss payee on any insurance claim.  If Eastside Detroit Elderly LDHALP defaulted on its obligations, the city was entitled to accelerate repayment, foreclose on the mortgage, and pursue a cause of action for damages.

The project was completed and residents moved into the building.  In 2017, Motor City Holdings II and defendant Shelborne Development Company, LLC purchased partnership interests in Eastside Detroit Elderly LDHALP and assumed all of the rights and obligations under the partnership agreement and the project.  Defendant Kathy S. Makino-Leipsitz is the managing partner of Motor City Holdings and Shelborne Development Company.  The city was not notified of the 2017 purchase of the partnership interest and did not provide written consent for the purchase.

In 2019, the building was destroyed by fire.  Shelborne Development Company was the named insured on the insurance policy for the property.  Contrary to the terms of the loan agreement, the city was not named as an additional insured on the policy or a loss payee on the claim.  Defendants received $8,300,000 in fire insurance proceeds in six installments for the full replacement cost of the structures on the subject property.  Each installment check was issued to Shelborne Development Company, Eastside Detroit Elderly LDHALP, Makino-Leipsitz, and defendant Mark Leipsitz.  The city was not named as a payee on any of the insurance checks, and defendants did not remit any portion of the insurance proceeds to the city.  Instead, defendants spent the entire $8,300,000 on other projects.

In January 2020 and February 2022, the city sent defendants notices of default on the terms of the loan, including failure to make monthly interest-only payments, obtain the city's written consent before transferring partnership interests, include the city as an additional insured and a loss payee, and remit the fire insurance proceeds to the city for payment of the outstanding principal balance of the loan.  The city informed defendants that it would accelerate repayment for the entire amount of the loan if defendants failed to cure the defaults.  Defendants did not cure the defaults.  The city then demanded payment in the principal amount of $1,428,000.

In 2021, the city filed suit against Eastside Detroit Elderly LDHALP and Eastside Detroit Elderly Development Corporation alleging that the subject property was a public nuisance and sought abatement by either restoration or demolition.[2]  The city also asserted that there was more than $14,000 in outstanding real property taxes for the subject property.  On December 14, 2021,

---

[1] The interest rate on the $1,428,000 loan was 6%, compounded annually.  The payment note required Eastside Detroit Elderly LDHALP to make monthly interest-only payments of $250.

[2] The city also named "12801 Mack, Detroit, Michigan" and "any unknown, or unnamed claimants, owners, spouses of owners, lienholders, devisees, heirs, or assignees, or successors/subsidiaries/affiliates in interest[] of 12801 Mack, Detroit, Michigan" as defendants in the action.

Eastside Detroit Elderly LDHALP (through Leipsitz as its authorized representative) and the city stipulated to the entry of an order that provided for the immediate abatement of the nuisances at the subject property. The stipulated order outlined the steps that Eastside Detroit Elderly LDHALP agreed to take to renovate and/or demolish the subject property. Eastside Detroit Elderly LDHALP also agreed to pay all outstanding real property taxes for the subject property. The stipulated order authorized the city to enter the subject property and proceed with demolition and remediation of all buildings, improvements, and structures on the property at Eastside Detroit Elderly LDHALP's expense if it defaulted on any terms of the agreement. Relevantly, the stipulated order included the following language:

> **THIS IS FINAL ORDER THAT ADDRESSES ALL OF THE CLAIMS AT ISSUE IN THIS LAWSUIT OR WHICH COULD HAVE BEEN RAISED IN THIS ACTION AND CLOSES THE CASE. THE COURT SHALL RETAIN JURISDICTION TO ENFORCE THE TERMS OF THIS ORDER.**

Eastside Detroit Elderly LDHALP deposited $40,000 into escrow as part of the agreement to abate the nuisance but failed to renovate and/or demolish the subject property as outlined in the stipulated order. Accordingly, in March 2022, the city demolished the structures on the subject property.

In March 2022, the city commenced this action alleging claims for breach of contract and foreclosure against Eastside Detroit Elderly LDHALP only, and claims for common-law conversion, statutory conversion, constructive trust, unjust enrichment, and injunctive relief against all defendants. Following discovery, the city moved for summary disposition under MCR 2.116(C)(10) on all claims. In response, defendants denied all liability. Relevant to this appeal, defendants argued that this action was barred because the city and Eastside Detroit Elderly LDHALP stipulated to dismiss all of the claims at issue in the 2021 nuisance-abatement action and claims "which could have been raised" in the 2021 action. Defendants also argued that the city's claims were barred because MCR 2.203 required the city to join all claims that it had against defendants when it filed the nuisance-abatement action. The city denied that its claims were barred by the language of the stipulated order, by MCR 2.203(A), or res judicata. The city asserted that the 2021 action was limited to a claim for nuisance abatement, did not state any cause of action for the 2004 loan agreement, and did not include Shelbourne, Makino-Leipsitz, or Leipsitz. The city further argued that the 2021 stipulated order did not mention the 2004 loan agreement or the insurance claim. The city maintained that the facts and evidence essential in the two lawsuits were vastly different and did not arise out of the same transaction or occurrence.

At the motion hearing, the trial court rejected defendants' argument that the claim was barred and stated that it would grant summary disposition to the city on the breach-of-contract claim against Eastside Detroit Elderly LDHALP. But the trial court concluded that there were issues of material fact on the city's conversion claims. However, an order was not entered at that time.

At the pretrial conference, defendants maintained that the trial court had not addressed whether the city's action was barred by res judicata. The trial court allowed the parties to present additional arguments and file supplemental briefing on the issue.

After the parties filed their supplemental briefing, the trial court held a hearing to address the res judicata issue. At the conclusion of the parties' arguments, the trial court stated:

> [T]he point is whether this—whether an action is barred by res judicata, and the fact that Case Number 21-008488-CH and the present case did not arise out of a single group of operative facts. Case 21-008488-CH was based on the Defendants' violation of various city codes and statute. It was an action of abatement—to abate nuisance at the property and collect property taxes.
>
> This present action arises out of Defendants' failure to name the city as an insured and failure to comply with other terms of agreement [sic] entered into between the parties. And as such, this Court does not, cannot find that res judicata would apply.

Thereafter, a bench trial was held. Although an order had not yet been entered regarding the res judicata issue, the trial court stated: "There is no res judicata and we're gonna proceed from there," making it clear that this case was not barred by the 2021 stipulated order. The trial court limited the issues at trial to the city's right to the insurance proceeds and whether defendants' retention of those proceeds constituted common-law and statutory conversion.

After the trial, the trial court entered an opinion and order granting in part and denying in part the city's motion for summary disposition under MCR 2.116(C)(10). The trial court granted summary disposition to the city on its breach-of-contract claim but held that there were genuine issues of material fact on the city's remaining claims. In addition, the trial court concluded that the city's claims were not barred by res judicata or release:

> Case No. 21-008488-CH and the present case did not arise out of a single group of operative facts. Case No. 21-008488-CH was based on the Defendants' violation of various city codes and statutes. It was an action to abate nuisances at the property and collect property taxes. The present action arises out of Defendants' failure to name the City as an insured, and failure to comply with other terms of agreements entered into between the parties.
>
> Moreover, to extent Defendants argue that the City's claims are barred by release based on the final order in Case No. 21-008488-CH, their argument is overly broad and does not recognize the limited nature of the release. The release specifically stated: "This is a final order that addresses all of the claims at issue in this lawsuit or which could have been raised in this action and closes the case." The release does not reference all claims, but rather "claims . . . which could have been raised in *this* action." (emphasis added). In other words, it was limited to claims arising out the same transaction or occurrence as Case No. 21-008488-CH, i.e., claims related to the creation and maintenance of a nuisance and failure to pay property taxes.[3]

---

[3] The trial court also held that the city's claims were not barred under MCR 2.203(A).

-4-

The trial court also entered an opinion and order with its findings of fact and conclusions of law following the bench trial. The trial court ruled in favor of the city on its claims for common-law and statutory conversion, concluding that "the evidence established that Plaintiff had an ownership interest based on the amount necessary to cure the Note, $1.4 million, entitling it to receive $1.4 million of the proceeds, and that Defendants converted the proceeds to their own use by depositing the insurance checks into their own accounts." The trial court rejected defendants' arguments that they were unaware of the city's interest and defendants' obligations, stating that they lacked credibility and legal merit. The trial court held that the city had established damages of $1.4 million and was entitled to treble damages under MCL 600.2919a. However, the trial court declined to imply a contract where defendants' retention of the fire insurance proceeds arose out of the loan agreement and thus rejected the city's unjust-enrichment claim. The trial court entered a judgment for $1,428,000 against defendant Eastside Detroit Elderly LDHALP for breach of contract, $4,284,000 against all defendants for common-law and statutory conversion (treble damages), and $376,217.50 against Eastside Detroit Elderly LDHALP for demolition costs, blight fines, and relocation expenses.

Defendant moved for reconsideration arguing that the amounts of damages were duplicative, and the award of treble damages should be stricken because the trial court failed to articulate its reasoning. In response, the city proposed language to be added to the judgment to clarify that it did not provide for duplicative recovery.[4] The city further asserted that the trial court had adequately explained its award of treble damages. The trial court adopted the city's proposed language, which was approved by defendants, and amended the judgment to clarify that it did not provide for duplicative recovery. But the trial court denied defendants' motion for reconsideration of the award of treble damages, stating that its opinion and order following the bench trial described in detail defendants' dishonest conduct, "which was egregious and warranted treble damages."

This appeal followed. On appeal, defendants do not challenge the trial court's factual findings, and Eastside Detroit Elderly LDHALP does not dispute that it breached the loan agreement by failing to pay the loan and failing to name the city as an additional insured and a loss payee.

## II. RELEASE AND RES JUDICATA

Defendants argue that this action is barred by release and res judicata because the city and Eastside Detroit Elderly LDHALP stipulated to dismiss all of the claims at issue in the 2021

---

[4] The city proposed the following language:

> To avoid duplicate recovery, it is ordered that the maximum amount Plaintiff may recover under this Judgment is $4,656,217.50 ($4,280,000 + $171,105.00 + $171,735.00 + $31,377.50), and that any partial recovery of any portion of this sum by the City shall reduce the total remaining amount the City may recover accordingly.

nuisance-abatement action and claims "which could have been raised" in the 2021 action. We disagree.

In response to the city's motion for summary disposition under MCR 2.116(C)(10), defendants argued that this action was barred.[5] "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). The interpretation of a release presents a question of law that we also review de novo. *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 13; 614 NW2d 169 (2000). Similarly, whether a claim is barred by res judicata is a question of law that we also review de novo. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 379; 596 NW2d 153 (1999).

An agreement to settle pending litigation constitutes a contract, and the rules governing construction and interpretation of a contract apply. *Clark v Al-Amin*, 309 Mich App 387, 394; 872 NW2d 730 (2015). The "goal in interpreting a contract is always to ascertain and give effect to the intent of the parties as reflected in the plain language of the contract." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 271-272; 1 NW3d 308 (2022). "When a court interprets a contract, the entire contract must be read and construed as a whole." *Smith v Smith*, 292 Mich App 699, 702; 823 NW2d 114 (2011). "All the parts must be harmonized as much as possible, and each word of the contract must be given effect, if possible." *Id*. "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008) (cleaned up). "Parties are presumed to understand and intend what the language employed clearly states." *Twp of Chestonia v Twp of Star*, 266 Mich App 423, 432; 702 NW2d 631 (2005). "The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity." *Gortney v Norfolk & Western R Co*, 216 Mich App 535, 540, 549 NW2d 612 (1996). "If the terms of the release are unambiguous, contradictory inferences become subjective, and irrelevant, and the legal effect of the language is a question of law to be resolved summarily." *Id*. at 541 (cleaned up).

In the present case, the title of the 19-page order in the 2021 action reflects that it is a stipulated order between the parties "Requiring the Immediate Abatement of the Nuisances at 12801 Mack, Detroit, MI." The order references the city's 2021 verified complaint and states that the parties agreed to the order and its terms "to immediately abate the public nuisance(s) and blight violations at the Subject Property[.]" The order explains that Eastside Detroit Elderly LDHALP was awaiting approval from the state to renovate the property. The order provides a detailed timeline for the abatement actions that Eastside Detroit Elderly LDHALP agreed to take while awaiting approval, the actions it agreed to take to renovate the property if it obtained approval, and the actions it agreed to take to complete demolition if its renovation application was denied. The order authorizes the city to enter the subject property and proceed with demolition and remediation

_____

[5] MCR 2.116(I)(1) provides that "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." Under this rule, a trial court has authority to grant summary disposition sua sponte, as long as one of the two conditions in the rule is satisfied. *Boulton v Fenton Twp*, 272 Mich App 456, 462-463; 726 NW2d 733 (2006).

of all buildings, improvements, and structures on the property at Eastside Detroit Elderly LDHALP's expense if it defaulted on any terms of the agreement. The order also directs Eastside Detroit Elderly LDHALP to pay all outstanding property taxes. At the end of all of the terms of the parties' agreement, the order states:

> **THIS IS FINAL ORDER THAT ADDRESSES ALL OF THE CLAIMS AT ISSUE IN THIS LAWSUIT OR WHICH COULD HAVE BEEN RAISED IN THIS ACTION AND CLOSES THE CASE. THE COURT SHALL RETAIN JURISDICTION TO ENFORCE THE TERMS OF THIS ORDER.**

The stipulated order's language is unambiguous.[6] Reading the stipulated order as a whole, it is clear that the parties intended to address all claims actually raised in the nuisance-abatement action and every claim arising out of the same transaction (i.e., claims related to the creation and maintenance of a nuisance and failure to pay property taxes) which the parties, exercising reasonable diligence, could have raised but did not. Neither the complaint nor the order reference Eastside Detroit Elderly LDHALP's obligations under the 2004 loan agreement, breaches of the agreement, repayment obligations, or the city's contractual rights to insurance proceeds. The trial court did not err by concluding that the language of the stipulated order did not bar this action.

Defendants also claim that this action is barred by res judicata. "The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *Garrett v Washington*, 314 Mich App 436, 441; 886 NW2d 762 (2016) (cleaned up). The elements of res judicata include: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). The party asserting res judicata has the burden to prove that it applies. *Garrett*, 314 Mich App at 441. Res judicata applies to consent judgments, which are final and binding. *Ditmore v Michalik*, 244 Mich App 569, 576; 625 NW2d 462 (2001). The doctrine of res judicata has been applied broadly to include not only claims that were already litigated but every claim arising from the same transaction that the parties exercising reasonable diligence could have raised but failed to do so in the prior action. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 418; 733

---

[6] Both below and on appeal, defendants have relied on extrinsic evidence to try to establish the parties' intent in drafting the 2021 stipulated order. But the "parol evidence rule . . . prohibits the use of extrinsic evidence to interpret unambiguous language within a document." *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010); see also *In re Smith Trust*, 480 Mich at 24; *Mich Chandelier Co v Morse*, 297 Mich 41, 48; 297 NW 64 (1941) ("Parol evidence under the guise of a claimed latent ambiguity is not permissible to vary, add to, or contradict the plainly expressed terms of this writing, or to substitute a different contract for it, to show an intention or purpose not therein expressed.") (cleaned up). Defendants have also referenced pleadings from the 2021 action that were not part of the trial court record in this action and thus cannot be considered on appeal. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal.").

NW2d 755 (2007). We apply "a transactional test to determine if the matter could have been resolved in the first case." *Id*. at 420, citing *Adair*, 470 Mich at 123. Under the transactional test, the assertion of different theories of relief constitutes a single cause of action when a single group of operative facts gives rise to the assertion of relief. *Adair*, 470 Mich at 124. "Whether a factual grouping constitutes a 'transaction' for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit[.]" *Id*. at 125 (cleaned up; emphasis removed).

The complaint in the 2021 action alleged that the subject property was a public nuisance and sought the abatement of the public nuisance through remediation, either by restoration or demolition. The nuisance-abatement had nothing to do with Eastside Detroit Elderly LDHAPA's obligations under the 2004 loan agreement, breaches of the agreement, repayment obligations, the city's contractual rights to insurance proceeds, defendants' receipt of the insurance proceeds, or defendants' use of the insurance proceeds. Abatement of the public nuisance would not have resolved the breaches of the 2004 loan agreement or defendants' improper use of the insurance proceeds on other projects. The only operative facts in the nuisance-abatement action were those necessary for a determination whether the public nuisance would be abated by either restoration or demolition. In contrast, this action sought money damages for Eastside Detroit Elderly LDHAPA's default on the 2004 loan agreement and defendants' conversion of the fire insurance claim proceeds. None of the facts necessary for resolving the nuisance-abatement action were relevant to this action. The city's ability to prove the need for abatement of a public nuisance had no bearing on the merits of this action for breach of contract, common-law conversion, and statutory conversion. The operative facts of the two cases were not related in motivation and did not "form a convenient trial unit" for purposes of res judicata. Accordingly, the trial court did not err by concluding that this action was not barred by res judicata.[7]

### III. CONVERSION CLAIMS

Defendants further argue that the trial court erred by entering a judgment in favor of the city on the conversion claims because the city could not demonstrate that it held an ownership interest in the specific funds that the insurance carrier transmitted to Eastside Detroit Elderly LDHALP. We disagree.

"We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo." *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). Clear error exists if there is no evidentiary support for a finding or if this Court has a definite and firm conviction that a mistake has occurred. *Id*. at 251. "The trial court's findings are given great deference because it is in a better position to examine the facts." *Id*.

---

[7] Defendants also make a one-sentence statement in their reply brief that the city's claim is barred by MCR 2.203(A). Defendants did not raise any arguments regarding MCR 2.203 in their brief on appeal or provide any authority or analysis in their reply brief. Consequently, this issue is abandoned. See MCR 7.212(C)(7); *MOSES, Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006) ("If a party fails to adequately brief a position, or support a claim with authority, it is abandoned.").

"Conversion, both at common law and under the statute, is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Aroma Wines & Equip, Inc v Columbian Dist Services, Inc (Aroma Wines I)*, 303 Mich App 441, 447; 844 NW2d 727 (2013), aff'd 497 Mich 337 (2015) (cleaned up). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 14; 779 NW2d 237 (2010). Conversion, whether statutory or common-law, sounds in tort. *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc (Aroma Wines II)*, 497 Mich 337, 346-362; 871 NW2d 136 (2015). It is an intentional tort because "the converter's actions are willful[.]" *Magley v M & W Inc*, 325 Mich App 307, 314-315; 926 NW2d 1 (2018) (cleaned up). But one can commit conversion unwittingly if "unaware of the plaintiff's outstanding property interest." *Id.* at 315 (cleaned up). "Good faith, mistake, and ignorance are not defenses to a claim of conversion." *Id.*

"To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care" and "must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111-112; 593 NW2d 595 (1999) (cleaned up). For example, "[a]n action for conversion lies where an individual cashes a check and retains the full amount of the check when he is entitled to only a portion of that amount." *Citizens Ins Co v Delcamp Truck Center, Inc*, 178 Mich App 570, 576; 444 NW2d 210 (1989). "When conversion is committed by a corporation, the agents and officers of the corporation may also be found personally liable for their active participation in the tort, even though they do not personally benefit thereby." *Id.*

Statutory conversion under MCL 600.2919a provides:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

>(a) Another person's stealing or embezzling property or converting property to the other person's own use.

>(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

"[I]n addition to the common-law elements for conversion, a plaintiff claiming statutory conversion must show that the conversion was for the defendant's 'own use.' " *Magley*, 325 Mich App at 314 n 3. This requires the plaintiff to show "that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Aroma Wines II*, 497 Mich at 359.

Defendants argue that a tort action may not be maintained because there is an underlying contract. We disagree. Defendants have "a separate and distinct legal duty under the common law to not exercise dominion and control over the [insurance proceeds] that was inconsistent with [the city's] right to possession." *Hoffman Machinery Corp v Reid Machinery, Inc*, __ Mich App __, __; __ NW3d __ (2025) (Docket No. 368468); slip op at 10. The loan agreement, payment note, and mortgage established the city's ownership interest in $1,428,000 of the insurance proceeds. Under the terms of the payment note, the principal sum of the $1,428,000 loan was "secured by the proceeds of any claim payable under any insurance now owned or hereafter acquired on the Mortgaged Property to be improved containing a mortgage or loss payable clause identifying the City as a mortgagee or a loss payee . . . ." The mortgage also clearly stated that all compensation and proceeds from an insured event were assigned to the city for the outstanding principal balance of the note, accrued interest, and all reasonable costs and expenses including attorneys' fees.

Contrary to the terms of the loan documents, the city was not named as an additional insured or a loss payee on the insurance policy. Consequently, all of the insurance proceeds were paid directly to defendants. The city demanded payment in the amount of $1,428,000 on the defaulted loan and asserted its right to the insurance proceeds for the amount of the outstanding principal. Defendants failed to pay the outstanding principal balance of the loan or remit any of the insurance proceeds to the city. Instead, defendants converted the insurance proceeds to their own use by depositing the proceeds in their accounts and using the proceeds for other projects.

At trial, defendants claimed that they were unaware of the city's ownership interest in $1,428,000 of the insurance proceeds and their obligations. Defendants also contended that they had negotiated a plan with the city to use $1,428,000 of the insurance proceeds to rebuild the project. But the trial court found that these claims lacked credibility, factual support, and legal merit.

Reviewing the record and giving deference to the trial court's findings, the trial court did not err by concluding that defendants were liable for common-law and statutory conversion. The trial court also did not abuse its discretion by awarding treble damages. See *Aroma Wines I*, 303 Mich App at 449 (holding that the decision "whether to award treble damages is a question for the trier of fact").

Affirmed.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Philip P. Mariani

-10-